Michael D. MASKREY and Jane Z. Maskrey, his wife, Plaintiffs-Respondents and Cross-Appellants,

UNITED SERVICES AUTOMOBILE ASSOCIATION, and United States of America, Plaintiffs-Respondents,

v.

VOLKSWAGENWERK AKTIENGESELLSCHAFT, a German corporation, and Volkswagen of America, Inc., a New Jersey corporation, Defendants-Appellants and Cross-Respondents,

Thomas R. SZUTA, Defendant.†

Court of Appeals

*No. 84–170. Submitted on briefs April 11, 1985.—
Decided May 28, 1985.*
(Also reported in 370 N.W.2d 815.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

146

For the plaintiffs-respondents and cross-appellants Michael Maskrey and Jane Maskrey the cause was submitted on the briefs of *Frisch, Dudek & Slattery, Ltd.*, with *Robert A. Slattery* and *David A. McClurg* of counsel, of Milwaukee.

For the defendants-appellants and cross-respondents Volkswagenwerk Aktiengesellschaft and Volkswagen of America, Inc., the cause was submitted on the briefs of *Borgelt, Powell, Peterson & Frauen, S.C.*, with *Jeffrey S. Fertl* of counsel, of Milwaukee, and *Herzfeld & Rubin, P.C.*, with *Michael Hoenig* of counsel, of New York, New York.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

MOSER, J. This is an appeal from a judgment in favor of Michael D. Maskrey (Maskrey) for compensatory damages in the total amount of $474,198.17 including costs and interest, and in favor of Jane Z. Maskrey (Jane) in the amount of $30,047.88 for compensatory damages. The United States government and the United States Automobile Association also had separate judgments for the medical expenses paid on behalf of Maskrey. These judgments were granted jointly and severally against Volkswagenwerk Aktiengesellschaft, a German corpora-

tion (VW of Germany), and Volkswagen of America, Inc., a New Jersey corporation (VW of America).

Maskrey was also awarded punitive damages of $500,-813.36, including interest, and Jane was awarded punitive damages of $29,249.59, including interest, against VW of Germany after the trial court reduced the jury's punitive damages verdict under the *Powers* rule[1] and dismissed the punitive damages claim against VW of America. The Maskreys accepted the punitive damages reduction, but reserved their appeal rights. VW of Germany and VW of America appeal the judgment awarding compensatory damages and VW of Germany appeals the punitive damages award. The Maskreys cross-appeal from the trial court's rulings on motions after verdict reducing the jury's punitive damages awards. They further claim that the trial court erred in entering judgment for fifty-seven percent of the compensatory damages awarded by the jury, and finally that it erred in not increasing Maskrey's damages for past loss of earning capacity.

Maskrey was injured in a two-vehicle accident on October 14, 1978, that occurred at approximately 2 a.m. when he was driving a 1975 VW type II van called a campmobile south on Kinnickinnic Avenue near the intersection of East Howard Avenue. His vehicle was struck head-on in an accident with a 1976 Pontiac automobile driven by Thomas R. Szuta (Szuta) who admitted at trial that he was "bombed" from overindulgence in alcoholic beverages. The record further reflects that Szuta's blood alcohol level was .337% by weight after the accident. The Szuta vehicle crossed over the centerline of Kinnickinnic Avenue immediately before the accident. During the accident the front bumper of the Pontiac rode over the front bumper of the campmobile and into the campmobile's passenger compartment pinning Maskrey in the vehicle behind the steering wheel and dashboard. The

---

[1] *Powers v. Allstate Ins. Co.,* 10 Wis. 2d 78, 91–92, 102 N.W.2d 393, 400 (1960).

campmobile was a rear-engine vehicle; thus, when the Pontiac passed over the bumper, the car crushed the front sheet metal that protected Maskrey's legs. Maskrey was not wearing the campmobile's shoulder seat-belt harness. Maskrey's injuries consisted of an injured right knee, cuts and bruises to his left leg, a severely lacerated scalp, deep arm lacerations, right shoulder pain, a fractured left femur, tibia and fibula. Maskrey's left heel pad (the calcaneus or os calcis bone) was fractured and a U-shaped avulsion, or tearing away of his left heel pad, occurred. All injuries required hospitalization and Maskrey's left foot injury required numerous skin grafts.

The trial was conducted before a jury and the trial court submitted the following issues to the jury: (1) Were Szuta and Maskrey causally negligent in driving their vehicles at the time of the accident? The jury found that Maskrey was not negligent in his driving, but that Szuta was causally negligent. (2) Was VW causally negligent for Maskrey's enhanced injuries because of the design, testing and failure to warn users of the campmobile? The jury found that the VW companies were causally negligent as to design and testing, but not as to warning the users of the campmobile. (3) Was the campmobile, when it left the control of VW, unreasonably dangerous as to its design, testing and warning the users, and, if so, were these product defects the cause of Maskrey's enhanced injuries? The jury found the campmobile was defective as to design, testing and warning, but that only the defective design and testing were a cause of Maskrey's enhanced injuries. (4) Was Maskrey's failure to use the available seat belt causal negligence affecting his injuries? The jury answered that Maskrey's failure to use the seat belt was causal negligence as to his own injuries.

The jury also was asked to determine the causal *negligence* of Szuta, Maskrey and the VW companies without regard to Maskrey's failure to use the available seat

belt. The jury found Szuta forty-three percent, Maskrey zero percent and the VW companies fifty-seven percent causally negligent for all of Maskrey's injuries.

The jury was then asked to allocate or apportion the causal negligence for three categories of *injury*. It found that fifty-seven percent of Maskrey's injuries were "enhanced injuries" resulting from VW's causal negligence in the design and testing of the defective campmobile; that twenty-eight percent of his injuries would have occurred without any defect in the campmobile and absent Maskrey's failure to use a seat belt; and that fifteen percent of Maskrey's injuries were caused by his failure to wear a seat belt.

The trial court, in accord with a stipulation of the parties, answered the jury question concerning Maskrey's past medical and hospital expenses in the sum of $57,-086.67. The jury found the following compensatory damages for Maskrey: DePaul Rehabilitation Hospital, $3,-516.58; Dr. William Crowley, $500; future medical expenses, $35,000; past and future loss of earning capacity, $360,000; and past and future pain, suffering and disability, $400,000. The jury further found that Jane suffered compensatory damages for loss of consortium, society and companionship in the amount of $50,000. The jury also assessed punitive damages against both VW companies in the amount of $800,000 for Maskrey and $200,000 for Jane.

On motions after verdict, the trial court affirmed the liability and compensatory damages findings of the jury, but reduced the jury's findings of punitive damages to an amount equal to Maskrey's and Jane's adjusted compensatory damages. The trial court specifically found that the punitive damages were unreasonable, but that the award was not due to perversity. The trial court then rendered the judgment from which both sides appeal.

VW of Germany and VW of America present the following issues on appeal: whether the trial court erred in

interpreting and applying the Wisconsin law governing
enhanced injuries; whether the trial court erred in not
applying Wisconsin procedural and evidentiary safe-
guards concerning the law of punitive damages; whether
the punitive damages, as remitted by the trial court, were
supported by clear, satisfactory and convincing evidence;
whether the trial court erred in not instructing the jury
concerning Maskrey's alleged failure to use reasonable
care to observe an open and obvious defect in the camp-
mobile; whether it erred in allowing a motion picture of
a simulated crash involving dummies to be shown to the
jury; and finally, whether the defendants should be
granted a new trial in the interests of justice.

On cross-appeal, the Maskreys present the following
issues: whether the trial court improperly held that the
VW companies were only liable for fifty-seven percent of
the jury award, rather than fifty-seven percent plus the
twenty-eight percent attributable to the accident itself;
whether the trial court erred in reducing the punitive
damages awarded to both the Maskreys; whether the trial
court erred in excluding evidence as to the present value
of Maskrey's earning capacity which resulted in a reduc-
tion of his award for past wage loss; and whether the
trial court erred in not allowing preverdict interest at
average market rates on Maskrey's past medical ex-
penses.

## ENHANCED INJURY LIABILITY

In *Butzow v. Wausau Memorial Hospital,* our supreme
court held that a doctor-tortfeasor who aggravated an
injury caused by a predecessor tortfeasor was not jointly
liable for all the injuries to a claimant.[2] In *Johnson v.
Heintz,* the court held that in cases involving multi-
vehicle automobile accidents, the plaintiff has the burden
of proof to show injury and damages caused by the neg-

---

[2] 51 Wis. 2d 281, 288–91, 187 N.W.2d 349, 352–54 (1971).

ligence of the tortfeasors, but that it is the defendants' burden to allocate the damages from two or more impacts, and that separate verdict questions for the comparative negligence damages are mandated in this circumstance.[3] In *Foley v. City of West Allis,* while the supreme court questioned the trial court's methodology in the verdict questions, it stated that a seat belt defense should be treated like a second accident case and that the jury should allocate causal negligence to the accident and should also separately allocate seat-belt negligence in order to mitigate damages against the joint tortfeasors causing the accident.[4] *Foley* further held that if the special verdict questions and the trial court's instructions together adequately convey the necessary information to the jury and the jury makes the necessary findings to allow the court to calculate plaintiff's recovery, there is no error[5] because, as a general rule, where there is a logical basis to allocate damages between two or more incidents and among various parties, courts should attempt to do so.[6]

Subsequent to the instant trial, our supreme court, in *Sumnicht v. Toyota Motor Sales U.S.A., Inc.,* decided the proper method for trial courts to apply in products lia-

[3] 73 Wis. 2d 286, 301–07, 243 N.W.2d 815, 825–28 (1976); the court's analysis of placing the burden of proof of apportionment of damages on the defendants whose combined negligence brought about harm to the plaintiffs comports with that of the Restatement (Second) of Torts § 433B(2) at 441 (1965).

[4] 113 Wis. 2d 475, 485–87, 335 N.W.2d 824, 829–30 (1983); *see also* sec. 895.045, Stats.

[5] *Foley, supra* note 4, at 494–95, 335 N.W.2d at 833.

[6] *Id.* at 485–86, 335 N.W.2d at 829. (We note that the instant case is unique because it contains three "collisions," the first being the accident itself, the second being the collision which resulted from VW's defective product and which enhanced Maskrey's injuries, and the third being the collision which resulted from his failure to wear a seat belt. *Foley* states that the failure to wear a seat belt should be treated as a second collision, but in this case it was the third "collision").

bility cases where the claimant alleges that he suffered enhanced injuries because a vehicle was not crashworthy.[7]  In *Sumnicht*, the enhanced injuries and the injuries resulting from the crash itself were found to be indivisible.  Two caveats must be noted before we proceed: (1) we acknowledge that the resultant injuries and damages in *Sumnicht* were indivisible; and (2) the concurring opinion criticizes the majority opinion for unnecessary and extensive dicta.[8]  We note, however, that the concurring opinion does not criticize the reasoning of the dicta, only its necessity.

The *Sumnicht* dicta is instructive to the case-at-hand because it extensively discusses the merits and demerits of four federal cases that were relied upon by VW and Maskrey before the trial court and this court.  These cases deal with negligence and strict liability claims against manufacturers, and at issue was the question of liability for injuries suffered in the crash itself and for those enhanced injuries suffered in the second collision because of the product's defect.

In *Larsen v. General Motors Corp.*, the 8th circuit court of appeals held that a manufacturer's design defect which rendered a motor vehicle uncrashworthy should not subject the manufacturer to liability for all of the injuries and damages stemming from an accident.[9]  The court said the manufacturer should be liable for that portion of the injuries and damages over and above the damage that probably would have occurred as a result of the impact or collision absent the defective design.

Two divergent streams of legal analysis of this problem have developed in federal cases subsequent to *Larsen*.  The first approach was established in *Huddell v. Levin*, a strict liability case in which the court required the plaintiff to establish the following: (1) that there

---

[7] 121 Wis. 2d 338, 357–60, 360 N.W.2d 2, 10–12 (1984).

[8] *Id.* at 379–80, 360 N.W.2d at 21 (Heffernan, C.J., concurring).

[9] 391 F.2d 495, 503 (8th Cir 1968).

was an alternative, safer design practicable under the circumstances; (2) those injuries which would have resulted had the alternative design been used; and (3) as a corollary of the second requirement, the extent of the enhanced injuries attributable to the defective design of the product.[10]

Other federal cases, while agreeing with *Larsen*, reject the *Huddell* court's approach. In *Fox v. Ford Motor Co.* the 10th circuit held that in crashworthiness cases, where enhanced injuries occur due to a product defect, it is generally the plaintiff's duty to prove proximate cause of the injuries and damages, and in such a case the manufacturer is liable only for the damages within the orbit of risk created by him.[11] *Fox* criticized the *Huddell* rationale because it did not follow the orthodox doctrine of joint liability of concurrent tortfeasors for the injuries flowing from their concurrence in one impact.[12]

But in *Mitchell v. Volkswagenwerk, AG* the 8th circuit court of appeals directly rejected the second and third posits of the *Huddell* rationale because they violate the time-honored, common law rules of legal causation, turning those rules into a morass of confusion and uncertainty.[13] *Mitchell* stated that the *Huddell* decision did so because its second posit requires a party to prove, and a jury to try, a hypothetical case.[14] Our supreme court has rejected *Huddell's* second and third requirements and opted for the *Fox* and *Mitchell* analysis because the *Huddell* requirements were inapposite to Wisconsin's strict liability law which has never required a plaintiff to prove a negative fact—that is, what the injuries would have been, had there been no defect. The Wisconsin rule of strict liability requires proof that the product was in a

---

[10] 537 F.2d 726, 737–38 (3d Cir. 1976).

[11] 575 F.2d 774, 787 (10th Cir. 1978).

[12] *Id.*

[13] 669 F.2d 1199, 1205 (8th Cir. 1982).

[14] *Id.* at 1204.

defective condition and unreasonably dangerous when it entered the stream of commerce, and that the defect was a substantial factor in producing the plaintiff's harm.[15]

To be sure, the federal cases and our supreme court's decision in *Sumnicht* all involved second collision, enhanced injuries in cases where the injuries were indivisible. In the case at hand, the Maskreys' experts' conclusions, albeit hotly contested by VW, were that Maskrey's injuries would have been substantially less, but for the negligent design and testing of the campmobile and the fact that the product was unreasonably dangerous when it left VW's control. The experts stated that VW's negligent design and testing were the causes of Maskrey's enhanced leg and foot injuries. The experts further opined that surely Maskrey would have been injured in the accident with Szuta, but he probably would have walked away from the accident, but for the negligent design and unreasonable dangerousness of the campmobile. Of course, they admitted that Maskrey could have injured his legs in the Szuta accident and possibly could have broken one or both legs in that crash, but the experts steadfastly clung to their theory that VW's negligence and the unreasonably dangerous defect in the campmobile caused Maskrey's serious leg injuries.

The trial court here fashioned its instructions and verdict in accord with Wisconsin law as stated in *Foley, Johnson* and *Butzow*. It rejected VW's request to comply with the tripartite requirements of *Huddell*, noting that the *Fox* and *Mitchell* analysis of the second crash enhancement damages comported more favorably to Wisconsin law on causation than did *Huddell*. The trial court did so fortuitously, before the dicta in *Sumnicht* was available. Essentially, the trial court employed the second crash analysis found in *Sumnicht*.

---

[15] *Sumnicht, supra* note 7, at 357–58, 360 N.W.2d at 11.

We note that the trial court, on at least two occasions, stated that it could not see how the injuries to Maskrey could be delineated so that VW would ultimately only be held responsible for the enhanced injuries to Maskrey caused by VW's negligence and for placing a defectively designed and tested product into the market. By the end of the trial, the trial court was so satisfied. The resultant verdict and instructions to the jury properly allowed the jury to address the issue of causal negligence for the crash itself, and to address the causal negligence of VW in design and testing the campmobile and whether VW was strictly liable for placing a defectively designed and tested product in the stream of commerce which caused Maskrey's enhanced injuries. The jury instructions and verdict with respect to question 11 carefully allowed the jury to first allocate a percentage of negligence to each of the actors which caused all of Maskrey's injuries (except any injury related to his failure to wear a seat belt). The jury was then instructed with respect to question twelve to calculate the percentage of Maskrey's enhanced injuries caused by VW's defective vehicle (fifty-seven percent), the percentage of those injuries that would have occurred in the accident without VW's defective vehicle and absent Maskrey's failure to use his seat belt (twenty-eight percent), and finally, the percentage of Maskrey's injuries that resulted from his failure to wear his seat belt (fifteen percent). The trial court carefully instructed the jury on the allocation questions and told the jury to relate back to the previous answers before answering the subdivisions of each allocation to assure a rational continuity to their responses.

The trial court properly placed the initial burden on Maskrey to prove that Szuta's negligence and VW's defective product were substantial factors in causing the harm for which he claimed damages.[16] Once such evi-

---

[16] *Id.*

dence was adduced, the trial court also properly placed the burden on VW to apportion the damages.[17] The trial court properly placed the burden of proof of the injuries due to the crash between Maskrey and Szuta and VW in conformance with Wisconsin precedent.[18] It also properly placed the burden of apportioning the percentage for Maskrey's injuries for failure to wear a seat belt at the time of the accident on VW.[19] We therefore hold that there was no error in the trial court's instructions and that the verdict of the jury should be affirmed on liability issues.

It follows that the jury's verdict on compensatory damages should stand. The trial court was correct in holding VW liable only for the divisible, enhanced injuries found by the jury due to VW's negligence in design and testing and for releasing a defectively designed and tested product into the stream of commerce. VW was therefore liable to Maskrey for fifty-seven percent of the damages found by the jury. It should be noted that on motions after verdict the trial court explicitly determined that VW had met its burden of proof to show the allocation of Maskrey's injuries due to the accident itself and also the degree of Maskrey's culpability for his failure to use the seat belt. Our affirmance of the trial court disposes of the first two issues raised on appeal by VW and on cross-appeal by Maskrey.

## PUNITIVE DAMAGES

VW next argues that the trial court erred in taking under advisement its motion to dismiss the Maskreys'

[17] *Id.* at 358–60, 360 N.W.2d at 11–12.

[18] *See Johnson, supra* note 3, at 301–07, 243 N.W.2d at 825–28; Restatement (Second) of Torts § 433B at 441 (1965).

[19] *See Foley, supra* note 4, at 485–87, 335 N.W.2d at 829–30.

punitive damages claim and that there was insufficient evidence to support the award of punitive damages.

Four months before trial, the Maskreys were allowed to amend their complaint to include a claim for punitive damages. At the commencement of the trial no mention was made to the jury that the Maskreys were seeking punitive damages from the VW companies. During the Maskreys' case-in-chief the only evidence adduced to support their punitive damages claim was their experts' testimony that VW negligently designed and tested the vehicle and also released a dangerously designed and tested product into the stream of commerce. One expert also testified that an English translation of an article published in German in 1978 entitled "Active and Passive Safety of a Forward-Control Vehicle," describing the results of 120 frontal crash testings of a campmobile-type vehicle, was false and wrong because the testing did not attempt to show the vehicle's dipping effect caused by deceleration. The trial court seemed to say that the article was insufficient evidence to have the jury decide the issue of punitive damages. The trial court, during the Maskreys' case-in-chief, refused to allow a Maskrey expert to testify to the net worth of VW. The trial court did allow an offer of proof which showed VW of Germany had a net worth of 1.2 billion dollars. At the end of Maskrey's case-in-chief, the VW companies moved for dismissal of the punitive damages claim for lack of evidence. At the Maskreys' request, the trial court took the motion under advisement.

At the close of the plaintiff's evidence, any defendant may move for dismissal of a claim for insufficiency of evidence.[20] This kind of motion should not be granted unless there is no credible evidence to support a finding in favor of the plaintiff when all evidence and reasonable

---

[20] Sec. 805.14(3), Stats.

inferences therefrom are considered in a light most favorable to the plaintiff.[21] If a jury could disagree on the facts or the inferences from the facts, the motion must be denied and the ultimate facts determined by the jury.[22] An appellate court also must view the evidence in a light most favorable to the plaintiff.[23] The trial court decides whether the evidence establishes a proper case for the allowance of punitive damages and whether the issue should be submitted to the jury.[24] Unless there exists evidence upon which a jury could find that the wrongdoer's conduct was "outrageous," the trial court should not submit the issue of punitive damages. Such evidence must show that the defendant acted maliciously or in willful or reckless disregard of the plaintiff's rights to justify the imposition of punitive damages.[25] The plaintiff's burden is to prove such a right to punitive damages by proof that is clear, satisfactory and convincing.[26]

We hold that the trial court erred as a matter of law in taking under advisement the motion to dismiss the punitive damages claim for insufficient evidence at the close of the Maskreys' case-in-chief. The trial court further erred in denying the motion to dismiss the Maskreys' punitive damages claim. There simply was no evidence of any conduct on the part of the VW companies that could be construed in any way to be outrageous, or which amounted to maliciousness, or willful or reckless

[21] *Christianson v. Downs*, 90 Wis. 2d 332, 334–35, 279 N.W.2d 918, 919–20 (1979).

[22] *Gries v. First Wisconsin Nat'l Bank of Milwaukee*, 82 Wis. 2d 774, 777, 264 N.W.2d 254, 256 (1978).

[23] *Id.*

[24] *Wangen v. Ford Motor Co.*, 97 Wis. 2d 260, 298, 294 N.W.2d 437, 457 (1980).

[25] *Id.* at 298–99, 294 N.W.2d at 457.

[26] *Id.* at 299, 294 N.W.2d at 457.

disregard of the Maskreys' rights. The Maskreys failed to produce any evidence of outrageous conduct, much less clear, satisfactory and convincing evidence of such conduct. Since the Maskreys failed to meet any evidentiary burden of proof in this case for punitive damages in their case-in-chief, the trial court also erred in taking the motion under advisement. Because there was no evidence before the jury to establish any punitive damages award at the close of the Maskreys' case-in-chief, the trial court should have dismissed the claim at that stage of the trial; the failure to dismiss the punitive damages claim was prejudicial error. The punitive damages award is reversed. The Maskreys' failure to prove entitlement to punitive damages in their case-in-chief disposes of all related punitive damages issues raised by the parties.

## OPEN AND OBVIOUS DEFECT

VW argues that the trial court erred in not instructing the jury as to the contributory negligence of Maskrey for his failure to protect himself from an open and obvious defect and that the trial court erred in failing to give a strict liability contributory negligence instruction.[27] Here, Maskrey's expert stated that the defect was not obvious until the vehicle was cut open and examined. The VW experts testified that the company was ignorant of the dipping effect caused by brake deceleration and of the possibility of bumper override. With this kind of expert testimony, it is difficult to understand how Maskrey, a four-year naval corpsman involved in respiratory therapy, should be aware of such a defect. The experts

[27] *See* Wis J I—Civil 3254 and 3268 (1971); *Kozlowski v. John E. Smith's Sons Co.*, 87 Wis. 2d 882, 895, 275 N.W.2d 915, 920–21 (1979).

said the defect was not open and obvious until the vehicle was cut open and that the company, which produced hundreds of thousands of these same vehicles, and its trial experts were totally unaware of this front-end problem. In fact, this argument borders on being specious. The trial court was correct in rejecting the requested contributory negligence instructions simply because the defect was not open and obvious to an ordinary, rational human being. There was no abuse of discretion on this issue.

## CRASH FILM

VW next argues that the trial court abused its discretion in allowing the Maskreys to exhibit a motion picture of crash experiments which employed dummies. The purpose of the simulated test was to show the dipping effect that occurred upon rapid braking of the campmobile. This was accomplished by fixation of the suspension system to simulate a stopping campmobile. The simulation further exemplified that the dipping caused an oncoming vehicle's bumper to override the campmobile's bumper, thereby causing an invasion of the passenger area of the vehicle. Another purpose of the test was to show occupancy kinematics[28] of the dummy inside the campmobile during such a crash. Portions of the motion picture were shown to the jury in slow motion. Maskrey's crash expert testified, outside the presence of the jury, that the crash experiments results were filmed for use in a number of like trials and that the simulations in the film were substantially the same as the accident that occurred in this case. He also testified that the uninstrumented dummy used in the experiment was equivalent to a fifty percentile human being, as opposed

---

[28] Taber's Cyclopedic Medical Dictionary 775 (C. Thomas ed. 1981) defines kinematics as the science of motion.

to Maskrey who, because of his 6'4" height and weight in excess of two hundred pounds, fell in the ninety-five percentile category of human beings. The expert said Maskrey's motions would not have been much different from the movement of the dummy in the experiment because this crash was primarily to show the encapsulation of the campmobile's driver's legs due to the intrusion of the oncoming vehicle into the campmobile's passenger area. The trial court gave the following reasons for allowing the jury to see the film:

THE COURT: Okay. When I ruled that the dummy would not be allowed in the film, it was based on the examination of the witness that he wasn't at all interested in kinematics and wasn't instrumented. And from that I drew the inference that the dummy was just placed there to look like a human being injured in a crash.

However, this witness now has provided testimony which demonstrates its relevance to his conclusions and to the evidence that is to be presented by the defense as to how injuries occurred. And while it's not exactly similar, he has testified in his expert opinion that the basic principles are the same, and the differences are insubstantial, and according to the factors that are brought up by the defense go more to the weight of the evidence and are matters for cross-examination rather than exclusion of evidence.

And accordingly I will overrule any earlier ruling and allow the film as seen in its entirety to be shown to the jury.

On this appeal, in motions *in limine* before trial, in a motion during trial, and on motions after verdict, VW argued primarily that the crash depicted in the film was not similar to the instant case, that the uninstrumented dummy used in the experiment was not of the ninety-five percentile and that, therefore, the experiment was dissimilar to the accident in this case. VW argues that the trial court abused its discretion in allowing the film to be shown to the jury because it prejudiced

the jury against VW. We note that VW also provides a litany of other supposed problems with the film; however, we reject VW's assertion that it was in any way prejudiced by these alleged problems.

Pretrial experiments may be admitted into evidence if their probative value is not substantially outweighed by prejudice, confusion, and waste of time.[29] Similarity of the movie to replicate the issues in the case is required.[30] Motion pictures of experiments are proper, if no distortion occurs, but if it does exist, then the films should be excluded.[31] Experts are allowed to describe such experiments, state the results and give their conclusions based thereon.[32] Films of experiments by accident reconstructionists, physicists, engineers or other qualified experts on the cause of accidents, offered to illustrate the principles employed and the conclusions reached are properly admissible in evidence, provided they are not misleading in themselves, and the jury is made aware that they are offered as illustrations of the principles involved.[33] If enough of the obviously important factors in the case are duplicated in the experiment, and if the failure to control other possibly relevant variables is explained, and if the jury is aided, the court should let the evidence in.[34]

The trial court did not abuse its discretion in allowing the jury to see the film. Demonstrative simulations of crashes are to be viewed by a jury if they are similar

---

[29] McCormick, *Evidence* § 202, at 601 (E. Cleary 3d ed. 1984).
[30] *Id.*

[31] *Id.* at § 214, at 673–74; 3 Wigmore, *Evidence* § 798a, at 260 (J. Chadbourn rev. 1970).

[32] 3 *Jones on Evidence* § 15:8, at 25 (S. Gard 6th ed. 1972).

[33] 3 Scott, *Photographic Evidence* § 1317, at 78 (2d ed. Supp. 1984).

[34] McCormick, *Evidence, supra* note 29, at § 202, at 602.

to the original event and not so prejudicial as to destroy a party's ability to present a defense. Here, Maskrey's expert testified that, while the film was not exactly the same as the instant collision, it was sufficiently similar to give the jury a view of what occurs in this type of accident. We see no problem with the fixation of the campmobile suspension system to show the dipping effect that occurred during rapid braking or deceleration. The experts testified that the oncoming vehicle in the experiment was traveling at the speed claimed to be the accident speed in the instant case. Just because the oncoming vehicle in the test was a different model automobile is, as far as we are concerned, immaterial because it had the same apparent weight, front bumper height and speed as Szuta's car in this case. We also note that although a fifty percentile uninstrumented dummy was employed, which certainly was not equivalent to Maskrey's ninety-five percentile figure, this was explained as being adequate to show the general encapsulation of a human being's legs due to the oncoming vehicle's invasion of the passenger compartment of the campmobile. We further note that VW was allowed broad and extensive cross-examination to attempt to impeach the witnesses' credibility. This court, with the cooperation of both counsel to this appeal, viewed the five-minute film claimed to be prejudicial. We hold that, for the reasons stated above, there was no abuse of discretion by the trial court in allowing the jury to see the film in question.

## NEW TRIAL IN THE INTERESTS OF JUSTICE

VW claims it is entitled to a new trial in the interests of justice because of the accumulation of procedural, evidentiary and legal error  that occurred throughout the trial. In order to grant a new trial in the interests of

justice an appellate court must be convinced, when viewing the record as a whole, that there has been a miscarriage of justice or that a new trial would lead to a different result.[35] We are not so convinced.

Cross-Appeal

Because of our determinations concerning VW's liability both for enhanced injuries due to negligence and for the product's defect, and because of our determination that the jury's allocation was proper and because of our reversal of the punitive damages award, we need not address these issues again when discussing the Maskreys' cross-appeal. The Maskreys, however, raise two additional issues on cross-appeal.

## INFLATION FACTOR

The Maskreys argue on cross-appeal that the trial court erred as a matter of law in refusing to allow a calculation for inflation in determining damages for past loss of earning capacity. The jury may consider an inflation factor when considering future losses as a result of accidental injury.[36] But, it may not add an inflation factor to past loss of earning capacity as here requested. The general rule is that a jury may allow, as damages for loss of earnings for such period as an injured person is unable to perform his usual work or carry on his usual occupation, such sum as they find he or she was reasonably capable of earning at his or her occupation during such period.[37] Therefore, the trial court did not err in

---

[35] Sec. 752.35, Stats.; *Gates v. State*, 91 Wis. 2d 512, 525, 283 N.W.2d 474, 480 (Ct. App. 1979).

[36] *Cords v. Anderson*, 80 Wis. 2d 525, 550–52, 259 N.W.2d 672, 684–85 (1977).

[37] *Fischer v. Cleveland Punch & Shear Works Co.*, 91 Wis. 2d 85, 99, 280 N.W.2d 280, 287 (1979).

rejecting the Maskreys' inflation factor or in instructing the jury to reject the testimony on the inflation factor in finding past wage loss. Another problem with this claimed error is that the jury, with the Maskreys' counsel's approval, was asked to determine both past and future loss of earning capacity in a single question. There is simply no way this court can precisely determine what part the jury assessed as past loss of earning capacity and what part was loss of future earning capacity to enable it to determine if Maskrey really lost the claimed $21,180 due to lack of consideration of an inflation factor.

## PREVERDICT INTEREST

Lastly, the Maskreys argue that the trial court erred in not granting preverdict interest on the liquidated medical expenses because it was stipulated at trial that $57,086.67 in reasonable and necessary expenses were incurred. The Maskreys also ask for preverdict interest on contested medical expenses that the jury found as reasonable and necessary for monies paid to or owed to DePaul Rehabilitation Hospital and Dr. William Crowley in the total amount of $4,016.68. Thus, they seek preverdict interest on a total of $61,103.25. Our supreme court has rejected such interest charges on the basis that a decision to allow preverdict interest on unliquidated tort claims would require a study of complex social and economic factors and policy considerations which the court system is not equipped to make and that such a study is better left to the legislature.[38] We are bound by the supreme court's decision. The supreme court's decision would seem to control only the contested amounts paid to DePaul Rehabilitation Hospital and Dr. Crowley, but

---

[38] *Johnson v. Pearson Agri-Systems, Inc.,* 119 Wis. 2d 766, 782, 350 N.W.2d 127, 135 (1984).

not the stipulated claim of $57,086.67. Preverdict interest for the latter amount must also be rejected where the existence of multiple defendants prevents any single defendant, like VW here, from knowing its ultimate liability.[39] Here, VW forcefully defended against any liability for enhanced injuries due to the Maskreys' second collision theory and with equal force argued that it was not liable for any claimed causal common law negligence for the crash itself. On top of those arguments, the causal negligence of Szuta for common law negligence was an issue throughout the trial, even though he was judgment-proof because of bankruptcy. Because there were multiple defendants involved and because VW was subject to liability for only the enhanced injuries, it was prevented from knowing prior to trial the precise amount of its ultimate liability. Therefore, the trial court did not err in denying prejudgment interest for these injuries.

*By the Court.*—Judgment and order affirmed in part, reversed in part and cause remanded.

---

[39] *Id.* at 781, 350 N.W.2d at 135.