STATE of Wisconsin, Plaintiff-Respondent,

v.

Jason K. VAN BUREN, Defendant-Appellant.†

Court of Appeals

*No. 2006AP3025–CR. Submitted on briefs October 11, 2007.
—Decided January 3, 2008.*

2008 WI App 26

(Also reported in 746 N.W.2d 545.)

† Petition to review denied 6/10/08.

447

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Waring R. Fincke* of West Bend.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Jeffrey J. Kassel*, assistant attorney general.

Before Brown, C.J., Anderson, P.J., and Snyder, J.

¶ 1. BROWN, C.J. Jason K. Van Buren appeals his convictions of repeated sexual assault of a child, expos-

ing a child to harmful material, and possession of child pornography. He claims that there was insufficient evidence to convict him of the child pornography charge because the State adduced no evidence that the photographs involved were real images of real children, rather than computer-generated or manipulated pictures. We reject this argument. The case Van Buren relies on, *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), does not require expert testimony or other evidence to establish the reality of apparently real photographs. Where there has been no evidence adduced (or even any claim made) that the photographs were anything other than what they appeared to be, we hold that the photographs themselves are sufficient evidence of the reality of what they depict. Van Buren also alleges ineffective assistance of counsel and requests a new trial in the interests of justice. We reject each ineffective assistance claim and refuse to exercise our discretionary reversal power for the reasons stated below.

¶ 2. This case began when three of Van Buren's friends, believing that something "just didn't seem right," between Van Buren and an 11–year-old girl, S.E.R., contacted the West Bend police. One of the friends testified at trial that Van Buren and S.E.R. acted like "two kids in love . . . holding hands, placing hands on each other's legs, putting their arms around each other. Just very unusual." This friend also testified that Van Buren had told her that he was sexually attracted to children. Another testified that Van Buren told her that he was a pedophile and that he had put his finger into S.E.R.'s vagina.

¶ 3. A police officer interviewed S.E.R. at the police station, and she told him that she and Van Buren had been having sexual intercourse for about a year and

a half. The same officer later interviewed Van Buren at the police station. Van Buren initially denied any inappropriate relationship with S.E.R., though he described himself as a pedophile and admitted to having child pornography on his computer. Eventually, Van Buren admitted to having ten "sexual encounters" with S.E.R., four to six of which involved sexual intercourse.

¶ 4. The police later sent Van Buren's computer to the crime lab, where a technician determined that it contained 51,760 images of child pornography. Printouts of several of these images were later entered into evidence.

¶ 5. We first address whether there was sufficient evidence to convict Van Buren of possessing child pornography. Van Buren does not claim that he did not possess the images at issue, but rather that the State failed to show that they constituted child pornography under *Free Speech Coalition*. In that case, the Supreme Court considered portions of a federal statute that prohibited "any visual depiction" that "appears to be . . . of a minor engaging in sexually explicit conduct" or that was "advertised, promoted, presented, described, or distributed in such a manner that conveys the impression" that it depicted "a minor engaging in sexually explicit conduct." *Id.* at 241–42. The Court explained that preventing the sexual exploitation of the children used to make child pornography is a compelling government interest, and that it justifies greater restrictions on child pornography than are permissible on other types of pornography. *See id.* at 240, 249–50. However, if material that appears to depict children engaging in sexual activity is, in reality, manufactured without the use of any actual children, this justification evaporates and the material cannot be banned unless it falls within the category of "obscenity." *See id.* Because the federal

statutes at issue purported to ban material that merely appeared to be, or was advertised as, child pornography, without regard to whether it was produced by exploiting actual children, the Court struck them down as unconstitutional. *Id.* at 258.

¶ 6. As an initial matter, we are somewhat perplexed as to the exact nature of Van Buren's challenge to his conviction. Though he argues in terms of sufficiency of the evidence rather than a facial challenge to the Wisconsin child pornography statute, at certain points in his brief he seems to be asserting that the state statute, like the ones at issue in *Free Speech Coalition*, fails to distinguish between that pornography which is produced using children and that which is not. This is simply not the case. WISCONSIN STAT. § 948.12(1m) (2005–06)[1] criminalizes the knowing possession of any "photograph . . . of a child engaging in sexually explicit conduct." To be convicted under this statute, a person (1) must know that he or she possesses the photograph, (2) must know the character and content of the sexually explicit conduct depicted, and (3) must know (or reasonably should know) "that the child engaged in sexually explicit conduct has not attained the age of 18 years." *Id.*

¶ 7. Van Buren states that the "statutory framework says absolutely nothing about actual or real, as opposed to computer generated or virtual, children. It does not address whether the State has to prove beyond a reasonable doubt that the person depicted in the material really exists or is actually under the age of 18." These contentions are off the mark. The issue in *Free*

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

*Speech Coalition* arose because the statutes there explicitly purported to restrict images of "non-real" children, i.e., images that "appear[ ] to be" or are "described" as images of children. *See Free Speech Coalition*, 535 U.S. at 241–42. But the Wisconsin statute speaks only of a "child," and there is nothing to suggest that the statutory term "child" includes a "non-real" child. The statutes contain thousands upon thousands of nouns, very few of which are preceded by the word "real"—because "real" is implied in the general understanding of most nouns.

¶ 8. Admittedly, the situation may be somewhat different when one is discussing depictions of things; for example, one might say that the film *Jurassic Park* "depicts dinosaurs," even though no real dinosaurs were used in the making of the film. But WIS. STAT. § 948.12(1m)(c) specifies that to be convicted under the statute, the person possessing the pornography must know or have reason to know "that the child engaged in sexually explicit conduct has not attained the age of 18 years." This element does not speak of depictions at all, but rather of a "child [who] has not attained the age of 18 years." This confirms that the plain language of § 948.12(1m) forbids only depictions of real children engaged in sexually explicit activity.[2]

¶ 9. We next turn to the core of Van Buren's claim: that the evidence adduced at trial was insufficient to convict him of the crime of possessing child pornography under the limited (and constitutional)

---

[2] The Court in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), did not address the constitutionality of restricting pictures created by "morphing"; i.e., innocent pictures of real children altered so that the children appear to be engaged in sexual activity. *Id.* at 242. This case likewise does not present the need to address whether our statute forbids possession of such images, and we do not address the question.

reading of the statute described above. He argues that "the State produced no evidence that the people depicted in the photographs were real children and not computer generated ones." Surely he does not mean this literally, because photographs themselves are undeniably evidence of the reality of the things they depict—this is why they are generally admissible in legal proceedings. *See State v. Peterson*, 222 Wis. 2d 449, 455–56, 588 N.W.2d 84 (Ct. App 1998). To be sure, they are not conclusive evidence (again, consider *Jurassic Park*), and so a more reasonable construction of Van Buren's claim is that they are not *good enough* evidence in this case.

¶ 10. We first note that Van Buren made no such claim before the trial court. Further, he did not attempt to adduce any evidence about virtual child pornography or ever suggest to the court or to the jury that the photographs at issue were anything other than real. As discussed above, the reality of the photographs is essential to the crime of possessing of child pornography; it is also an issue of fact to be resolved by the jury. If Van Buren wanted to challenge the reality of the photographs, he had a responsibility to do it during the trial, rather than on appeal.

¶ 11. Van Buren nevertheless insists that in an age in which computers can create increasingly realistic depictions of things, people, and situations that never existed, a jury is no longer capable, on its own, of judging whether a particular item of child pornography is "real," i.e., is a product of the real-world sexual exploitation of a child. According to Van Buren, something more than the photos themselves is now required to sustain a child pornography conviction. (Presumably he means that expert testimony or identification of the actual child involved is necessary.) Criminal defendants have repeat-

455

edly advanced this argument since the decision in *Free Speech Coalition*. With a few isolated exceptions, it has been rejected.[3] Even the on-point cases Van Buren cites have been reversed or abrogated in their respective jurisdictions.[4] Van Buren nevertheless urges us to adopt the position expounded by the dissent in *United States v. Rodriguez-Pacheco*, 475 F.3d 434 (1st Cir. 2007):

> That virtual and real child pornography images are indistinguishable, and that even experts have difficulty determining what is real and what is virtual, are not only undeniable scientific judgments promoted by the government . . . they are also conclusions which were unquestionably verified in the present case by the government's own actions, including the testimony of its own expert witness . . . .

*Id.* at 460 (Torruella, J., dissenting); *see also United States v. Frabizio*, 445 F. Supp. 2d 152, 157–58 (D. Mass. 2006), *clarified on rehearing*, 463 F. Supp. 2d 111.

---

[3] *See, e.g., State v. Tooley*, 872 N.E.2d 894, ¶¶ 50–52 (Ohio 2007) ("*Ashcroft* did not impose a heightened evidentiary burden on the state to . . . use expert testimony to prove that the image contains a real child"), *cert. denied*, 128 S. Ct. 912 (2008), and cases cited therein; *see also McIntyre v. State*, 897 A.2d 296, 310 (Md. Ct. Spec. App. 2006), and cases cited therein.

[4] *See, e.g., State v. Tooley*, 2005–Ohio-6709 (Ct. App.), *reversed*, 872 N.E.2d 894; *State v. Butler*, 2005 WL 735080 (Tenn. Crim. App. 2005), *abrogated by State v. Pickett*, 211 S.W.3d 696 (2007); *U.S. v. Sims*, 220 F. Supp. 2d 1222 (D.N.M. 2002), *rev'd in part*, 428 F.3d 945 (10th Cir. 2005). Van Buren also cites to several cases that do not support his argument that expert testimony is required for a child pornography conviction. *See*, e.g., *United States v. Ellyson*, 326 F.3d 522, 529–31 (4th Cir. 2003); *United States v. Pearl*, 324 F.3d 1210, 1213–14 (10th Cir. 2003). Each of these cases stands only for the *Free Speech Coalition* proposition that a conviction for child pornography must involve a real child; neither states an expert testimony requirement.

¶ 12. We find the rationale of the *Rodriguez-Pacheco* majority far more convincing. We can explain our view on the issue no better than the First Circuit did:

> In [*United States v. Nolan*, 818 F.2d 1015 (1st Cir. 1987)], this circuit rejected a per se rule that the government must produce expert testimony in addition to the images themselves, in order to prove beyond a reasonable doubt that the images depicted are of real children . . . . The defendant in *Nolan* argued that "the prosecution failed to prove that the pictures were not composite representations or otherwise faked or doctored, or . . . computer-generated" or even "fabricated using photographs of nude children taken from legitimate sources." *Nolan* held that the mere possibility, unsupported by evidence, that the images could have been produced by use of technology and not using real children was not sufficient to reject a lower court's ruling founded on reasonable inferences derived from experience and common sense.

*Rodriguez-Pacheco*, 475 F.3d at 439 (citations omitted).

¶ 13. The standard of review for challenges to sufficiency of the evidence is whether the evidence "is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). Further,

> [i]n viewing evidence which could support contrary inferences, the trier of fact is free to choose among conflicting inferences of the evidence and may, *within the bounds of reason,* reject that inference which is consistent with the innocence of the accused. Thus, when faced with a record of historical facts which supports more than one inference, an appellate court must accept and follow the inference drawn by the trier

of fact unless the evidence on which that inference is based is incredible as a matter of law.

*Id.* at 506–07 (citations omitted).

■

¶ 14. In this case, the jury was handed pictures that look, for all the world, like photographs of children engaged in sexually explicit conduct. The jury by its verdict drew the inference that the pictures *were* photographs of children engaged in sexually explicit conduct. Though Van Buren urges that one could also infer that the images were computer-generated, the task of an appellate court is not to search for inferences inconsistent with guilt. It is to accept the inferences drawn by the trier of fact "within the bounds of reason." The jury concluded that the images here are just what they appear to be, and by no stretch of the imagination could we call that conclusion "incredible as a matter of law."

¶ 15. Van Buren also claims that he was denied the effective assistance of counsel because of two actions his lawyer did not take. Van Buren argues that because his confession to the police was part of the evidence against him, his attorney should have sought out an expert on false confessions to testify. Van Buren also claims that his attorney should have requested a jury instruction specifying that in order to convict him of exposing a child to harmful material, the jurors had to agree unanimously on which of the two submitted photographs was "harmful material" that Van Buren had shown to the victim. We address each claimed error in turn.

¶ 16. At the *Machner*[5] hearing, Van Buren's appellate attorney questioned a research psychologist with

---

[5] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

expertise in false confessions. The psychologist had examined documents from the trial record and prepared a report summarizing what is known about false confessions, examining the interrogation techniques used by the detective in Van Buren's case, and discussing the features of Van Buren's personality that could make him more or less likely to confess to something he did not do. At the hearing, the expert testified along the outlines of his report, again describing different factors that make false confessions more likely and noting factors that could make Van Buren more or less likely to confess falsely. The expert stated, however, that he had no opinion as to whether Van Buren's confession was true or false.

¶ 17. Van Buren argues that his trial counsel was ineffective for failing to present the jury with testimony from a false-confession expert. A defendant claiming ineffective assistance of counsel must establish that: (1) the lawyer was deficient; and (2) the defendant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If a reviewing court determines that a defendant has failed to satisfy either prong of the *Strickland* test, it need not consider the other one. *Id.* at 697.

¶ 18. Here, we do not address the prejudice prong of *Strickland* because we conclude that Van Buren's counsel was not deficient. A finding of deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The representation must fall below an objective standard of reasonableness as measured against prevailing professional norms. *Id.* at

459

688. The State argues that Van Buren's counsel could not be ineffective because there are no published Wisconsin cases stating that expert testimony on false confessions is admissible, and the authorities in other states are split. Because a criminal defense attorney "is not required to object and argue a point of law that is unsettled," *State v. McMahon*, 186 Wis. 2d 68, 84, 519 N.W.2d 621 (Ct. App. 1994), the State argues, failing to adduce expert testimony when that testimony's admissibility is not firmly established can never be ineffective assistance of counsel.

¶ 19. Van Buren responds that even if there is no Wisconsin holding squarely allowing false-confession expert testimony at trial, the cases disallowing it come from jurisdictions that adhere to the much more restrictive *Daubert*[6] standard for scientific evidence. He argues that the evidence should and would come in under Wisconsin's lower standard. *See City of West Bend v. Wilkens*, 2005 WI App 36, ¶¶ 23–24, 278 Wis. 2d 643, 693 N.W.2d 324. However, we must keep in mind that this is an ineffective assistance claim. The issue is not whether the evidence could have come in, but whether Van Buren's counsel, by not offering it, fell below an objective standard of reasonableness as measured against prevailing professional norms. *Strickland*, 466 U.S. at 688. Even if Van Buren is correct and false-confession expert testimony should be admitted, the published and unpublished cases contain only one instance of its introduction at a trial in Wisconsin, nearly fifty years ago.[7] Given this fact, we could not

---

[6] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[7] The case is *State v. Bronston*, 7 Wis. 2d 627, 637–38, 97 N.W.2d 504 (1959), *modified*, 7 Wis. 2d 627, 642a, 98 N.W.2d 468 (1959), in which the supreme court held that expert testimony

hold that the failure to introduce such testimony falls below "prevailing professional norms."

¶ 20. Van Buren also asks us to reverse his conviction in the interest of justice, asserting that "the false confession issue" was not fully tried. *See* WIS. STAT. § 752.35. We disagree. The record shows that Van Buren's trial counsel attacked the conditions and veracity of Van Buren's confession in opening statements, in cross-examination of the officer who interrogated Van Buren, and in direct examination of Van Buren himself. We decline to exercise our discretionary reversal power because Van Buren's appellate counsel believes a different strategy would have been more effective. *See State v. Hubanks*, 173 Wis. 2d 1, 28–29, 496 N.W.2d 96 (Ct. App. 1992).

¶ 21. Van Buren finally argues that his trial counsel was ineffective for failing to request a specific jury unanimity instruction with respect to the charge of exposing a child to harmful material. During the trial, the victim identified two pictures of "naked kids" that she said Van Buren had shown her on his computer. The court gave a general instruction directing the jury that it had to reach a unanimous verdict. However, Van

should have been allowed as to a confession's "testimonial trustworthiness." The State points out that this case was overruled by *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 133 N.W.2d 753 (1965); Van Buren points out that this overruling was of the procedure of having a jury decide questions of a confession's voluntariness, *id.* at 258 and n.18, 261–62, and had nothing to do with the admissibility of expert testimony. Since this is an ineffective assistance claim, however, our analysis is not whether expert testimony was admissible in the first instance, but, as we have discussed, whether counsel's failure to attempt to introduce it was unprofessional error.

Buren argues that without an instruction specifically telling the jury that it had to agree on which of the identified pictures was both harmful and shown by Van Buren to the victim, it is possible that different jurors regarded different pictures as the grounds for his conviction.

¶ 22. We reject this claim because Van Buren has not demonstrated the prejudice necessary to show ineffective assistance of counsel. The cases cited by Van Buren state that a criminal defendant is entitled to a jury trial, *see State v. Cleveland*, 50 Wis. 2d 666, 670, 184 N.W.2d 899 (1971), and jury unanimity, *see State v. Koput*, 134 Wis. 2d 195, 203–04, 396 N.W.2d 773 (Ct. App. 1986), *rev'd on other grounds*, 142 Wis. 2d 370, 418 N.W.2d 804 (1988). They do not relieve a defendant claiming ineffective assistance of the burden to show that, because of counsel's unprofessional errors, the verdict is unreliable. In this case, Van Buren must show that there was a "reasonable probability" that the lack of a specific unanimity instruction resulted in a non-unanimous jury verdict. *See Strickland*, 466 U.S. at 694.

¶ 23. He has not so shown. The victim identified the two pictures nearly simultaneously, and both are undisputedly photos of "naked kids." There is simply no basis in the record to suggest that the jury might have believed the victim with respect to one of the images and not the other, or found one of the images harmful and the other not. Our confidence in the verdict, and its unanimity, is not at all undermined. *See id.*

*By the Court.*—Judgment and order affirmed.