**UNITED STATES of America,
Plaintiff,**

v.

**Thomas J. PEARL, Defendant.**

**No. 1:99–CR–021–ST.**

United States District Court,
D. Utah,
Northern Division.

March 6, 2000.

Elizabethanne C. Stevens, U.S. Attorney's Office, Stephanie D. Thacker, U.S. Dept. of Justice, Washington, DC, Judith A. Jensen, Utah Attorney General's Office, Litigation Unit, Salt Lake City, UT, for plaintiff.

Robert Breeze, Salt Lake City, UT, Bel–Ami J. de Montreaux, Montreux Freres PC, Salt Lake City, UT, for defendant.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNTS I, II, III, IV AND V OF THE INDICTMENT FOR VAGUENESS, OVERBREADTH AND ILLEGAL BURDEN SHIFTING AND FOR AN ORDER REQUIRING GOVERNMENT TO PROVE THE ALLEGED IMAGES ARE OF ACTUAL MINORS

STEWART, District Judge.

This matter came before the court for hearing on February 28, 2000, on Defendant's Motion to Dismiss Counts I, II, III, IV and V of the Indictment for Vagueness, Overbreadth and Illegal Burden Shifting and for an Order Requiring Government to Prove the Alleged Images are of Actual Minors.

Defendant seeks dismissal of the first five counts of the indictment against him. Defendant is charged with three counts of transporting child pornography by a computer in violation of 18 U.S.C. § 2252A(a)(1) (Counts 1–3); transporting child pornography by an airplane in violation of 18 U.S.C. § 2252A(a)(1) (Count 4); possession of child pornography in viola-

tion of 18 U.S.C. § 2252A(a)(5)(B) (Count 5); enticing illegal sex acts by a minor (Count 6); and, traveling in commerce to engage in an illegal sex act in violation of 18 U.S.C. § 2423(b) (Count 7). The basis for dismissal is defendant's claim that the underlying statutes which defendant is alleged to have violated resulting in the first five counts in the indictment, the Child Pornography Protection Act of 1996 (CPPA), 18 U.S.C. § 2252A, and its companion definitional statute 18 U.S.C. § 2256, are unconstitutional for vagueness, overbreadth and illegal burden shifting in that the CPPA prohibits the possession and the transportation via computer and airplane of child pornography using "cyber minors" in addition to actual minors. The CPPA, among other things added a new section 2252A to Title 18 and added a new subsection (8) to 18 U.S.C. § 2256, to expand the scope of prohibited "child pornography." S.Rep. 104–358, Sect. 3 and 4.

Defendant relies upon the Ninth Circuit decision, *Free Speech Coalition v. Reno,* 198 F.3d 1083 (9th Cir.1999), to support the claim that subsections (8)(B) and (8)(D) of § 2256 of the CPPA, those sections that define "child pornography" to include images not necessarily of real children, are unconstitutional. He furthermore appears to agree with the Ninth Circuit's position that such sections though void, are severable.

Defendant also asserts that the CPPA shifts the burden of proof to establish each and every element of the alleged crime of transportation or possession of child pornography beyond a reasonable doubt, from the government to the defendant. 18 U.S.C. § 2252A(c) (affirmative defense). Based upon defendant's assumption that the court will find in his favor on the unconstitutionality of those portions of the CPPA, the defendant seeks an order from the court requiring the government to prove that the images allegedly transported and possessed by defendant are of actual minors.

This court is being asked to decide the constitutionality of an act of Congress.

This is not a matter to be taken lightly by this, or any other court. In approaching such a task, it is essential to first ascertain what deference the court must afford the acts of Congress generally.

Every act of Congress is entitled to a "strong presumption of validity and constitutionality" *Barwick v. Celotex Corp.,* 736 F.2d 946, 955 (4th Cir.1984). An act of Congress should be invalidated "only for the most compelling constitutional reasons." *Mistretta v. United States,* 488 U.S. 361, 384, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). In *Westside Comm. Bd. of Educ. v. Mergens,* the Supreme Court said, "given the deference due 'the duly enacted and carefully considered decision of a coequal and representative branch of our Government,' " a court is not [to] lightly "second-guess such legislative judgments." 496 U.S. 226, 251, 110 S.Ct. 2356, 110 L.Ed.2d 191 (1990) (quoting *Walters v. National Ass'n of Radiation Survivors,* 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985)).

■ A more precise question is what deference the court must afford the findings of Congress in justifying a legislative enactment that triggers a challenge under the First Amendment. In *Turner Broadcasting System, Inc. v. F.C.C.,* 520 U.S. 180, 195–96, 117 S.Ct. 1174, 137 L.Ed.2d 369 (1997), the Supreme Court enunciated the standard.

In reviewing the constitutionality of a statute, "courts must accord substantial deference to the predictive judgments of Congress." [*Turner Broadcasting System, Inc. v. F.C.C.,* 512 U.S. 622, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994) (*Turner*).] Our sole obligation is "to assure that, in formulating its judgments, Congress has drawn reasonable inferences based on substantial evidence." *Id.,* at 666, 114 S.Ct. 2445. We owe Congress' findings deference in part because the institution "is far better equipped than the judiciary to 'amass and evaluate the vast amounts of data' bearing upon legislative questions." *Id.,* at 665–66, 114

S.Ct. 2445. This is not the sum of the matter, however. We owe Congress' findings an additional measure of deference out of respect for its authority to exercise the legislative power. Even in the realm of First Amendment questions where Congress must base its conclusions upon substantial evidence, deference must be accorded to its findings as to the harm to be avoided and the remedial measures adopted for that end, lest we infringe on traditional legislative authority to make predictive judgments when enacting nationwide regulatory policy.

*Turner Broadcasting,* 520 U.S. at 195–96, 117 S.Ct. 1174 (citations partially omitted).

In reviewing the specific act of Congress in question here, the CPPA, it is valuable to examine the treatment of child pornography by the Supreme Court apart from the CPPA.

In 1942, the Supreme Court held that not all speech is entitled to the same protection under the Constitution. The Supreme Court enunciated this standard in *Chaplinsky v. State of New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

[I]t is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene.... It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.

*Chaplinsky,* 315 U.S. at 571–72, 62 S.Ct. 766 (footnotes omitted).

When called upon to rule on the constitutionality of a New York statute intended to curb child pornography, the Supreme Court held "that the States are entitled to greater leeway in the regulation of pornographic depictions of children." *New York v. Ferber,* 458 U.S. 747, 756, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Further, the Court enunciated the holding that in specific and narrowed circumstances, child pornography was not to be afforded the protection of the First Amendment:

When a definable class of material ... bears so heavily and pervasively on the welfare of children engaged in its production, we think the balance of competing interests is clearly struck and that it is permissible to consider these materials as without the protection of the First Amendment.

*Ferber,* 458 at 764, 102 S.Ct. 3348.

In the case of *Osborne v. Ohio,* 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990), the Supreme Court upheld the conviction of a defendant for possession of child pornography in violation of Ohio state law. The Court held that the State could constitutionally proscribe the possession and viewing of child pornography, not because of the State's interest in protecting the viewer, but on the basis of its compelling interests in protecting the physical and psychological well-being of minors and in destroying the market for the exploitive use of children by penalizing those who possess and view the offending materials. *Id.,* 110 S.Ct. at 1696, 1697. "Given the gravity of the State's interests in this context, we find that Ohio may constitutionally proscribe the possession and viewing of child pornography." *Id.,* at 1697.

It is, of course, essential to state that *Ferber* and *Osborne* dealt with statutes that outlawed child pornography involving actual children. In both of these decisions, the Supreme Court relied upon the impact of child pornography on the child victims and the State's compelling interest in protecting children to justify the unique treatment afforded child pornography under the Constitution. *E.g. Ferber,* 458 U.S. at 756, 758, 102 S.Ct. 3348 ("[W]e have sustained legislation aimed at protecting the physical and emotional well-being of youth

even when the laws have operated in the sensitive area of constitutionally protected rights.") and *Osborne,* 110 S.Ct. at 1695 (distinguishing prior case striking down a State law involving child pornography where the state has a "compelling" interest in protecting child victims by stamping out the market for child pornography). But as noted above in *Osborne,* protection of the child exploited to produce the pornography is not the only justification for the criminalization of child pornography. 495 U.S. at 111, 110 S.Ct. 1691.

The question before this court, however, deals with the CPPA's expansion of the prohibited materials to include those that might not in fact be images of actual children, but rather those images that might be created by other means and do not necessarily involve actual, specific child victims. The provisions in question are found in subsection (8)(B) and (D) of § 2256 of the CPPA and read:

(8) "child pornography" means any visual depiction, including any photograph, . . . or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—

\* \* \* \* \* \*

(B) such visual depiction is, or appears to be, of a minor engaging in sexually explicit conduct; or,

\* \* \* · \* \* \*

(D) such visual depiction is advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or

contains a visual depiction of a minor engaging in sexually explicit conduct;
18 U.S.C. § 2256(8).

Defendant succinctly states his position in his Memorandum in support of his Motion to Dismiss: "Because Congress does not have a compelling interest in protecting "cyber" children the definitional scheme set forth in Subsections (B) and (D) is not closely tailored enough to exclude protected speech and is therefore void for overbreadth and is an illegal prior restraint." Def.'s Mem. at 5.

This appears to be a case of first impression in the Tenth Circuit.[1] As above noted, Defendant relies upon the Ninth Circuit opinion in *Free Speech Coalition v. Reno,* 198 F.3d 1083 (9th Cir.1999) to support his argument. In that opinion, the divided panel[2] held:

We hold that the First Amendment prohibits Congress from enacting a statute that makes criminal the generation of images of fictitious children engaged in imaginary but explicit sexual conduct.

\* \* \* \* \* \*

We find that the phrases "appears to be" a minor, and "conveys the impression" that the depiction portrays a minor, are vague and overbroad and thus do not meet the requirements of the First Amendment. Consequently we hold that while these two provisions of the Act do not pass constitutional muster, the balance of the Child Pornography Prevention Act is constitutional when the two phrases are stricken.

*Free Speech Coalition,* 198 F.3d at 1086.

The Ninth Circuit refused to rule on the constitutionality of the statutory affirmative defense contained in § 2252A(c), an issue that defendant is raising in this case.

---

**1.** In 1988, in *U.S. v. Reedy,* 845 F.2d 239 (10th Cir.1988) the Tenth Circuit upheld the constitutionality of section 2251(a) of the Child Protection Act against challenges that it was void for vagueness and overbreadth. In 1989, the Tenth Circuit held that the prohibition against "lascivious exhibition" of minors contained in subsection (2)(E) of 18 U.S.C.

§ 2256, as it then existed was not unconstitutionally vague as applied. *U.S. v. Wolf,* 890 F.2d 241 (10th Cir.1989).

**2.** The government advises that a petition for rehearing *en banc* has been filed in the *Free Speech Coalition* case. Government's Mem. at 2 n. 1.

In finding the CPPA to be unconstitutionally overbroad, the Ninth Circuit's primary reason was that the Act no longer focused its justification on the harm to children. Instead, when outlawing "visual depiction" that "is, or appears to be, of a minor engaging in sexually explicit conduct:"

> the 1996 law, the law at issue here, changed course. The regulation direction shifted from defining child pornography in terms of the harm inflicted upon real children to a determination that child pornography was evil in and of itself, whether it involved real children or not. This shift forms the basis of the constitutional challenge Free Speech makes here.

*Free Speech Coalition,* 198 F.3d at 1089.

The Ninth Circuit concluded that because the justification cited by Congress in passing the CPPA included reference to its impact on the viewer, that the CPPA was outlawing speech based upon its content. "Thus, the CPPA distinguishes favored from disfavored speech on the basis of the content of that speech." 198 F.3d at 1091. The Ninth Circuit held that such content-based restrictions require the government to establish a "compelling interest that is served by the statute, and it must show that the CPPA is narrowly tailored to fulfill that interest." *Id.* The Ninth Circuit concluded that the government failed to meet this test because there was insufficient evidence that the harm to real children from the use of artificial images was established:

> The critical ingredient of our analysis is the relationship between the dissemination of fabricated images of child pornography and additional acts of sexual abuse. Factual studies that establish the link between computer-generated child pornography and the subsequent sexual abuse of children apparently do not yet exist.

> \*    \*    \*    \*    \*    \*

In short, we find the articulated compelling state interest cannot justify the criminal proscription when no actual children are involved in the illicit images either by production or depiction. Because we find that Congress has not provided a compelling interest, we do not address the "narrow tailoring requirement."

*Free Speech Coalition,* 198 F.3d at 1093 and 1095.

In addition, the Ninth Circuit found the CPPA to be void for vagueness:

> A statute is void for vagueness if it fails to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary or discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

*Id.,* at 1095.

The Ninth Circuit found that the CPPA failed on both counts:

> The CPPA's criminalization of material that "appears to be a minor" and "convey[s] the impression" that the material is a minor engaged in explicitly sexual activity, is void for vagueness.... The two phrases are highly subjective. There is no explicit standard as to what the phrases mean. The phrases provide no measure to guide an ordinarily intelligent person about prohibited conduct and any such person could not be reasonably certain about whose perspective defines the appearance of a minor, or whose impression that a minor is involved leads to criminal prosecution.

> In the same light, the absence of definitions for these key phrases in the CPPA allows law enforcement officials to exercise their discretion, subjectively, about what "appears to be" or what "conveys the impression" of prohibited material. Thus, the vagueness of the statute's key phrases regarding computer · images permits enforcement in an arbitrary and discriminatory manner.

*Id.*

In opposing the Motion in the instant case, the government relies upon the opinion of the First Circuit, *United States v. Hilton,* 167 F.3d 61 (1st Cir.1999), in which

the constitutionality of the CPPA was upheld. In that case, the court was asked to strike down the CPPA as being overbroad and vague, the same arguments that later prevailed in *Free Speech Coalition.*

The *Hilton* court proceeded on the premise that, "a statute will not be invalidated as overbroad unless its overbreadth is 'real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'" *Hilton,* 167 F.3d at 71 (quoting *Osborne, supra,* 495 U.S. at 112, 110 S.Ct. 1691). Further, the *Hilton* court viewed itself limited when considering the necessity of overturning an act of Congress, "Where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Id.,* (quoting *Almendarez–Torres v. U.S.* 523 U.S. 224, 250, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)). This court agrees with those underlying principles set forth in *Hilton* and quoted *supra,* for approaching the question of the constitutionality of a statute.

The *Hilton* court rejected the overbreadth challenge to the CPPA by arguing that the Supreme Court decision in *Osborne, supra,* stated dual, legislative goals for efforts to outlaw child pornography:

> The *Osborne* Court explicitly approved the following legislative goals: stamping out child pornography because it often serves as a record of abuse of real children; and denying pedophiles and would-be child abusers access to child pornography, which could be used to seduce or coerce children into sexual activity. *Osborne,* 495 U.S. at 110–11, 110 S.Ct. 1691. The former remains intricately tied to the need to protect real children represented in the pictures, but the latter marks a subtle, yet crucial, extension of a state's legitimate interest to the protection of children not actually depicted in prohibited images.

*Hilton,* 167 F.3d at 70.

The *Hilton* Court then proceeded to find that the opening created by the Supreme Court in *Osborne* justified two legitimate reasons for outlawing child pornography, the first is the "safeguarding the physical and psychological well-being of children," and the second the "crippling of the clandestine child pornography trade." 167 F.3d at 73 (quoting *Osborne,* 495 U.S. at 110, 110 S.Ct. 1691). To that end, the criminalization of artificial images of child pornography was justified to help cripple the child pornography trade. The *Hilton* court said it would not "second-guess Congress's decision to address the social ills posed by the various types of virtual child pornography." 167 F.3d at 73.

On the question of vagueness, the *Hilton* court stated that though the grounds for overturning a law on vagueness grounds is a stringent one, that "[w]hen a law directly impinges on freedom of expression, as the CPPA does here, we must scrutinize the law with an even more skeptical eye." 167 F.3d at 75. Nevertheless, the *Hilton* court found that the CPPA was not unconstitutionally vague because the "appears to be a minor" standard is an objective one:

> A jury must decide, based on the totality of the circumstances, whether a reasonable unsuspecting viewer would consider the depiction to be of an actual individual under the age of 18 engaged in sexual activity. See S.Rep. 104–358, at pt. IV(c).

167 F.3d at 75.

The *Hilton* court further held that the fact that the CPPA requires scienter is an additional safeguard, "for the government must show not only that the individual purposefully acquired or distributed the material, but that he did so believing that the material was sexually explicit in nature and that it depicted a person who appeared to him to be (or that he anticipated would be) under 18 years old." *Id.* Finally, the court referred to the affirmative defenses available under the CPPA which

provided an "added measure of protection" from vagueness. *Id.* In sum:

> We believe, in short, that the statute's provisions "suitably limit" the reach of the Act so that a person of ordinary intelligence can easily discern likely unlawful conduct and conform his or her conduct appropriately. The statute carefully defines the term "minor." The scope of its prohibition, like the law evaluated in *Ferber*, is restricted to visual images. The statute describes, in painstaking detail, the types of sexually explicit depictions of children that are forbidden. As the Court said in *Osborne*, such limiting language "avoid[s] penalizing persons for viewing or possessing innocuous photographs of naked children." 495 U.S. at 114, 110 S.Ct. 1691.

*Hilton,* 167 F.3d at 75.

After *Hilton,* and one month before the Ninth Circuit's *Free Speech Coalition* opinion, the constitutionality of the CPPA was challenged in and upheld by the Eleventh Circuit in *United States v. Acheson,* 195 F.3d 645 (11th Cir.1999) (CPPA not found invalid, overbroad or void for vagueness).

■ This court accepts the premise adopted by both the *Hilton* and the *Free Speech Coalition* courts that the proscription on speech contained in the CPPA is content based. *Free Speech Coalition,* 198 F.3d at 1091 ("The child pornography law is at its essence founded upon conduct-based clarification of speech.") and *Hilton,* 167 F.3d at 69 ("The CPPA is a quintessential content specific statute."). Thus, this court believes that strict scrutiny by the court is required. *Free Speech Coalition,* 198 F.3d at 1091. However, this court finds that the Congressional purposes pass that strict scrutiny.

■ It appears clear that the Supreme Court has sanctioned congressional efforts to contain the evil of child pornography not just because of its impact on specific, identifiable, "real" children, but for the further

purpose of eliminating the child pornography trade generally. Being so, the CPPA's criminalization of the transport and possession of artificial or "cyber" child pornography is not an overbroad and unconstitutional reach by the Congress.

However, it is not necessary to reach the conclusion that there are dual justifications for attacking child pornography, as the *Hilton* court found. It appears clear that the criminalization of artificial or "cyber" child pornography, even though it may not involve the use of actual children, is intended to prevent harm to actual children.

The court relies upon the standard enunciated by the Supreme Court in *Turner,* 520 U.S. at 195–96, 117 S.Ct. 1174, quoted *supra,* regarding the duty of a court to give deference to findings by Congress. Among the stated "Congressional Findings" that were made to justify passage of the CPPA, is reference to the fact that child pornography, regardless whether it is based upon a real child or is simply a computer created image, is used to seduce other children into sexual activity.[3] The image is used to convince the child to disregard his or her inhibitions by showing other children "having fun." *Id.* Surely, the easily created and massive proliferation of computer generated child pornography will result in the more frequent use of those images to harm real children. As the Congressional Findings state:

> (9) the danger to children who are seduced and molested with the aid of child sex pictures is just as great when the child pornographer or child molester uses visual depictions of child sexual activity produced wholly or in part by electronic, mechanical, or other means, including by computer, as when the material consists of unretouched photographic images of actual children engaging in sexually explicit conduct.

Congressional Findings, ¶ 9.

Another, non-content related rationale for criminalizing cyber child pornography

---

**3.** See 18 U.S.C. § 2251 (West Supp.1999), Historical and Statutory Notes, Congressional Findings (Congressional Findings), ¶ 3. The Congressional Findings are also found at S.Rep. No. 104–358, Sect I.

noted in the Congressional Findings, is that the prohibition of the possession and viewing of child pornography, whether generated from real children victims or computer generated images, will:

> encourage the possessors of such material to rid themselves of or destroy the material, thereby helping to protect the victims of child pornography and to eliminate the market for the sexual exploitative use of children;

Congressional Findings, ¶ 12.

These Congressional Findings were basically brushed aside in the Ninth Circuit's *Free Speech Coalition* case, which found, as quoted above, that "[f]actual studies that establish the link between computer-generated child pornography and the subsequent sexual abuse of children apparently do not yet exist." 198 F.3d at 1093. In so doing, the Ninth Circuit re-examined the ten-year-old Meese Commission Report which was one part of the evidence considered by Congress and made its own determination that the Report found that the "use of sexually explicit photos or films of actual children played a small part in the overall problem involving harm to children." 198 F.3d at 1094. The Ninth Circuit did however, recognize that the Report "predate[d] the existing technology." *Id.*

However, the court's obligation to exercise independent judgment when First Amendment rights are implicated is not a license to reweigh the evidence *de novo,* or to replace Congress' factual predictions with its own. Rather, it is to assure that, in formulating its judgments, "Congress has drawn reasonable inferences based on substantial evidence." *Turner Broadcasting,* 520 U.S. at 196, 117 S.Ct. 1174.

In so analyzing Congress' proffered justification for the provisions added by the CPPA, the Ninth Circuit impermissibly failed to give "substantial deference" to Congress' findings. Instead, the Ninth Circuit conducted its own weighing process and substituted its factual findings for Congress' when it found there is no "demonstrated link between computer-generated images with harm to real children." 198 F.3d at 1094.

This court will not second guess congressional findings by re-weighing material relied upon by Congress in its assessment of harm to be avoided. Instead the court looks to whether Congress' findings as to the harm to be avoided and remedial measures to be adopted is based upon substantial evidence.

The problem of child pornography is one that Congress has wrested with repeatedly since 1977. *See Free Speech Coalition,* 198 F.3d at 1087–89 (history of federal child pornography laws). Congress, through the Senate Committee, heard evidence from the U.S. Postal Service Inspection Services' Computer Graphic specialists that the technology to produce "visual depictions of children engaging in sexually explicit conduct" is "readily-available off-the-shelf" and is inexpensive. Sen.Rep. 104–358, Sect. IV. Congress heard testimony that technology makes it possible to alter actual photos of children in sexually explicit poses so that it is not possible to determine that it was of an actual child— thereby rendering prosecution under the old law difficult. *Id.,* (Testimony of Bruce Taylor). Congress heard testimony from various persons that the danger to actual children who are seduced or molested with the aid of sexually explicit pictures is as great when virtual pictures are used as when unretouched photos are used. *Id.* (summarizing testimony of Deputy Assistant Attorney General Kevin Di Gregory, Dee Jepson, Dr. Victor Cline and Bruce Taylor). Thus, the evidence was substantial.[4] Accordingly, the government articu-

---

**4.** The Committee also heard evidence against the bill, a fact which does not affect the finding of substantial evidence. *See Turner Broadcasting,* 520 U.S. at 199, 117 S.Ct. 1174

("Constitution gives to Congress the role of weighing conflicting evidence in the legislative process.").

lated a compelling interest, protection of actual children, that is served by the CPPA and has shown that the CPPA is narrowly tailored to address that interest.

In sum, without having to tread upon the thin ice of criminalizing thought for its content, and without the further need of relying upon dual purposes for the CPPA, it is clear that the outlawing of "cyber" child pornography is intended to and will protect real children from exploitation through criminalizing the transportation and possession of computer generated child pornography.

■ Having carefully considered the Circuits' split of authority on the issue of the constitutionality of the CPPA on the issues of vagueness and overbreadth, this court concludes that the rationale contained in *Hilton* is persuasive. This court concludes, in agreement with *Hilton* and *Acheson*, for the reasons stated therein, that the CPPA is not overbroad. This court is also persuaded that the *Hilton* court was correct in its ruling on the vagueness issue and adopts its rationale:

> The district court found the CPPA unduly vague because it believed the "appears to be a minor" standard to be purely subjective in nature. To the contrary, we hold that the standard is an objective one. A jury must decide, based on the totality of the circumstances, whether a reasonable unsuspecting viewer would consider the depiction to be of an actual individual under the age of 18 engaged in sexual activity. See S.Rep. 104–358, at pt. IV(C).

\*   \*   \*   \*   \*   \*

The element of scienter also must be satisfied by the prosecution before a valid conviction may be obtained—for instance, the government must prove beyond a reasonable doubt that an individual "knowingly" possessed the child pornography. See 18 U.S.C. § 2252A(a)(5)(B). This statutory requirement serves as an additional safeguard, for the government must show not only that the individual purposefully acquired or distributed the material, but that he did so believing that the material was sexually explicit in nature and that it depicted a person who appeared to him to be (or that he anticipated would be) under 18 years old. *See U.S. v. X–Citement Video, Inc.,* 513 U.S. at 78, 115 S.Ct. 464, 130 L.Ed.2d 372 (holding that scienter requirement in related anti-child pornography statute "extends to both the sexually explicit nature of the material and to the age of the performers").

\*   \*   \*   \*   \*   \*

The CPPA offers an added measure of protection. It provides an affirmative defense if the person depicted actually was an adult at the time the image was created. When the defense is appropriate, the fact that the person depicted was a live model at least 18 years of age typically will lead to dismissal of the charge. Although Congress did not make the affirmative defense available to someone accused of unlawful possession (as opposed to any of the other offenses such as distribution), what an individual actually believed to be the age of the depicted person still goes to his state of mind in possessing the material. Thus, a defendant who honestly believes that the individual depicted in the image appears to be 18 years old or older (and is believed by a jury), or who can show that he knew the image was created by having a youthful-looking adult pose for it, must be acquitted, so long as the image was not presented or marketed as if it contained a real minor.

We believe, in short, that the statute's provisions "suitably limit" the reach of the Act so that a person of ordinary intelligence can easily discern likely unlawful conduct and conform his or her conduct appropriately. The statute carefully defines the term "minor." The scope of its prohibition, like the law evaluated in *Ferber,* is restricted to visual images. The statute describes, in painstaking detail, the types of sexually ex-

plicit depictions of children that are forbidden. As the Court said in *Osborne,* such limiting language "avoid[s] penalizing persons for viewing or possessing innocuous photographs of naked children." 495 U.S. at 114, 110 S.Ct. 1691, 109 L.Ed.2d 98.

We disagree with the district court's assumption that the use of a legal standard requiring an evaluation of the appearance of an image renders the test arbitrary or overly susceptible to manipulation. Reasonable objective assessments of the impression conveyed by a person's actions or how an image "appears" are routinely made by judges and juries. See, e.g., *Liteky v. United States,* 510 U.S. 540, 553 n. 2, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (noting that recusal motions under 28 U.S.C. § 455(a) are governed by "objective appearance of partiality" test); *Ferber,* 458 U.S. at 751, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (approved definition of child pornography banned "simulated" sexual conduct, which in ordinary usage means "to have or take on the appearance of"); *Miller,* 413 U.S. at 24, 93 S.Ct. 2607, 37 L.Ed.2d 419 (obscenity depends in part on whether material appeals to prurient interest of average person).

\* \* \* \* \* \*

We see no reason to strike down the CPPA as unconstitutionally vague. The language of the statute affords an ordinary consumer of sexually explicit material adequate notice of the kinds of images to avoid. The interaction among the applicable legal standards, moreover, offers the average person additional protection. These safeguards, working in concert, minimize the danger that this law might be enforced in an arbitrary or discriminatory fashion by overzealous police officers or prosecutors. *Hilton,* 167 F.3d at 75–77. *Accord Acheson,* 195 F.3d at 653 ("Because the statute puts a reasonable person on notice as to what conduct is prohibited and provides adequate protection against arbitrary enforcement, [defendant's] vagueness challenge fails.").

The defendant also asserts that the affirmative defense contained in the CPPA results in a illegal shifting of the burden from the prosecution to the defendant. This court does not find that argument to be persuasive. To the contrary, a clear reading of the law in question leads this court to the conclusion that the CPPA requires the government to prove each and every element of the crime beyond reasonable doubt, but then provides the defendant with the *opportunity* for a defense based upon § 2252A(c) of the CPPA. This is not an impermissible shifting of the burden of proof. *Patterson v. New York,* 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) ("[T]he universal rule in this country was that the prosecution must prove guilt beyond a reasonable doubt. At the same time, the long-accepted rule was that it was constitutionally permissible to provide that various affirmative defenses were to be proved by the defendant.").

Lastly, the court's resolution of defendant's challenge to the constitutionality of the CPPA's definitions of "child pornography" and its affirmative defense provision necessarily resolves his request for an order that the government prove the alleged images are of actual minors. Under the CPPA the government is not required to prove that the images are of actual minors, only that the images are or "appears to be" of a minor engaging in sexually explicit conduct or that the images were pandered as such.

In conclusion, the court finds no constitutional defect in subsections (8)(B) and (D) of § 2256 of the CPPA and no impermissible shifting of the burden of proof in the affirmative defenses contained in § 2252A(c) of that Act. Accordingly the court will deny the defendant's Motion. Based upon the foregoing, it is therefore

ORDERED that Defendant's Motion to Dismiss Counts I, II, III, IV and V of the Indictment for Vagueness, Overbreadth and Illegal Burden Shifting and for an Order Requiring Government to Prove the

Alleged Images are of Actual Minors is DENIED.