**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 9 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

THOMAS JARED PEARL,

      Defendant - Appellant.

No. 00-4170

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 99-CR-21-ST)**

---

Elizabethanne C. Stevens, Assistant United States Attorney, (Paul M. Warner, United States Attorney and Stephanie D. Thacker, Trial Attorney, U.S. Department of Justice, Child Exploitation and Obscenity Section, on the briefs), Salt Lake City, Utah, for Plaintiff - Appellee.

Jenine M. Jensen, Assistant Federal Public Defender (and Michael G. Katz, Federal Public Defender, on the briefs), Denver, Colorado, for Defendant - Appellant.

---

Before, **KELLY**, **PORFILIO**, and **BRISCOE**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

      Defendant-Appellant Thomas Jared Pearl was convicted in May 2000 of (1)

two counts of transporting child pornography by computer and transporting child

pornography by airplane in violation of 18 U.S.C. § 2252A(a)(1), (2) one count of possession of child pornography containing images produced using materials shipped in interstate and foreign commerce in violation of 18 U.S.C. § 2252A(a)(5)(B), (3) one count of using interstate commerce to attempt to persuade a minor to engage in unlawful sexual conduct in violation of 18 U.S.C. § 2422(b), and (4) one count of traveling in interstate commerce to engage in sex acts with a minor in violation of 18 U.S.C. § 2423(b). He was sentenced to 97 months imprisonment and 36 months of supervised release. On appeal, Mr. Pearl argues that (1) the Supreme Court's decision in Ashcroft v. Free Speech Coalition, 122 S. Ct. 1389 (2002) (holding unconstitutional portions of the Child Pornography Prevention Act of 1996), requires that his convictions for transporting and possessing child pornography be reversed and that the Double Jeopardy Clause precludes his being retried, (2) a due process violation occurred when police allegedly destroyed evidence in the case, and (3) the district court improperly imposed a 5-level increase under U.S.S.G. § 2G2.2(b)(2) because Mr. Pearl received no "pecuniary gain" for distribution of pornography.

Background

Beginning in November 1998, Mr. Pearl had a series of conversations via e-mail, Internet chat, and telephone with Camielle Call-Tarbet, a social worker in

Utah posing undercover as "Kami," a twelve year old girl. Mr. Pearl lived in the Washington, D.C., area at the time. Mr. Pearl sent Kami images of child pornography and attempted to arrange to have a sexual encounter with her from their first encounter over the Internet. Call-Tarbet contacted Detective Brad Franke of the Logan City, Utah, police department and told him that she had received child pornography over the Internet from an individual who apparently also wanted to have a sexual relationship with a twelve year old girl. Detective Franke contacted Agent Don Daufenbach of the U.S. Customs Service to aid in the investigation.

Detective Franke posed undercover as Kami's Uncle Dan and claimed to be a 35 year old man attempting to molest Kami. Together with Call-Tarbet, Franke arranged for Mr. Pearl to visit Salt Lake City in May of 1999. Mr. Pearl was arrested upon arrival at the Salt Lake City airport on May 21, 1999. He was carrying with him computer disks containing child pornography. A search of his laptop computer also revealed files containing child pornography and records of his e-mail messages.

On June 2, 1999, Mr. Pearl was indicted by a grand jury on three counts of transporting child pornography by computer (counts 1-3), one count of transporting child pornography by airplane (count 4), one count of possessing child pornography (count 5), one count of coercion and enticement to engage in

sexual conduct with a minor (count 6), and one count of traveling to engage in sexual conduct with a minor (count 7). Following a jury trial, Mr. Pearl was found guilty of counts 2 through 7 and was found not guilty of count 1.

## Discussion

A.    Ashcroft v. Free Speech Coalition

The district court's instructions to the jury on counts 2 through 5 contained both constitutional and unconstitutional definitions of child pornography. The court instructed the jury that child pornography is "any visual depiction . . . where (1) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct, or (2) such visual depiction is, or appears to be, of a minor engaging in sexually explicit conduct." Supp. I, Instruction 21. The "is, or appears to be" aspect of the definition of child pornography in 18 U.S.C. § 2256(8)(B) and relied upon by the district court in its instructions to the jury, see United States v. Pearl, 89 F. Supp. 2d 1237, 1247-48 (D. Utah 2000) (finding "appears to be" language in statute constitutional), was found to be overbroad and thereby unconstitutional by the Supreme Court. Free Speech Coalition, 122 S. Ct. at 1405. Because Mr. Pearl began his challenge as to the sufficiency of the indictment and the jury here returned a general verdict and did not specify the grounds for conviction, we must vacate the convictions on counts 2 through 5

because one of the possible grounds for conviction is unconstitutional.  See Griffin v. United States, 502 U.S. 46, 53 (1991) ("[W]here a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground."); Stromberg v. California, 283 U.S. 359, 368 (1931) ("[I]f any of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld.").  The government concedes that Mr. Pearl's convictions on these counts must be vacated in light of the Supreme Court's ruling in Free Speech Coalition, though appending a footnote in a later brief asking this court to affirm the convictions outright.  Aplee. Supp. Br. at 2; Aplee. 2d Supp Br. at 11 n.3.

We disagree with the dissent's view that, because Mr. Pearl failed to object to the jury instructions pursuant to Fed. R. Crim. P. 30, this court need only review for plain error and can affirm the convictions.  First, this court has endorsed the view that "the application of the plain error standard is inappropriate when the aggrieved party may object to the error at any time," as is the case with respect to challenges to an indictment under Fed. R. Crim. P. 12(b)(2).  United States v. Gama-Bastidas, 222 F.3d 779, 785 n.4 (10th Cir. 2000) (citations omitted).  Mr. Pearl moved to dismiss his indictment on the grounds that the CPPA's definition of child pornography was unconstitutionally overbroad, a view endorsed by the Supreme Court in Free Speech Coalition.  Though the safer

course would have been to pursue the argument as applied to the jury instructions, the district court had already issued a ruling squarely finding the CPPA's definition of child pornography constitutional–a ruling manifested in the erroneous jury instructions. The motion to dismiss the indictment plainly, then, preserved Mr. Pearl's right to challenge his convictions on appeal. See United States v. Hathaway, 318 F.3d 1001, 1010 (10th Cir. 2003) (holding that a "defendant cannot waive his right to challenge an indictment based upon its failure to charge an offense").[1]**

In the cases cited by the dissent in which convictions under the CPPA were affirmed post-Free Speech Coalition, we do not know whether the defendants challenged the indictments, and, furthermore, the government offered expert testimony at trial to prove that the images depicted actual minors. United States v. Hall, 312 F.3d 1250, 1260 (11th Cir. 2002); United States v. Richardson, 304 F.3d 1061, 1064 (11th Cir. 2002). Our review of the images in this case on appeal, however much they might appear to be actual minors, should not serve as

[1]Nor are we persuaded that a review for harmless error should result in affirming Mr. Pearl's convictions. See United States v. Ellyson, —F.3d—, 2003 WL 1194332, at *7 (4th Cir. March 17, 2003) (holding under harmless error review that verdict must be set aside where the government has failed "to establish the use of an actual child victim . . . . [and] the evidence in the record, coupled with the court's instructions, permitted the jury to convict [the defendant] on both a constitutional and unconstitutional basis").

- 6 -

a substitute for the government's burden of proving at trial the depiction of actual minors. Similarly, the fact that Mr. Pearl acknowledged at trial that the images "depict[ed] minors engaged in sexually explicit conduct," Rec. Vol. XV at 38, does not require affirmation of his convictions because it is precisely the ambiguity in the word "depict" that led to the Supreme Court's holding in Free Speech Coalition.

Our conclusion that Mr. Pearl's convictions on counts 2 through 5 must be reversed does not, however, preclude retrial of Mr. Pearl on these counts, the Double Jeopardy Clause of the Fifth Amendment notwithstanding. The government may retry a defendant whose convictions, as here, are set aside due to trial error without running afoul of the Double Jeopardy Clause. See United States v. Scott, 437 U.S. 82, 90-91 (1978) ("The successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, poses no bar to further prosecution on the same charge.") (citations omitted). Where the government produces no evidence at trial, then double jeopardy bars retrial. See United States v. Smith, 82 F.3d 1564, 1567-68 (10th Cir. 1996). That is certainly not the case here; there is sufficient evidence in this record to permit a jury to conclude beyond a reasonable doubt that the children in the pornographic images were actual minors. Because the government "cannot be held responsible for 'failing to muster' evidence sufficient to satisfy a

standard [actual minors] which did not exist at the time of trial," and because this is "trial error" rather than "pure insufficiency of evidence," Mr. Pearl may be retried without violating double jeopardy. United States v. Wacker, 72 F.3d 1453, 1465 (10th Cir. 1995).

B.     Brady/Trombetta Violations

Mr. Pearl claims that Detective Franke deleted e-mail messages and discarded a computer hard drive relevant to the case. In particular, Mr. Pearl alleges that Detective Franke deleted e-mail messages from Ms. Call-Tarbet sent during the course of the investigation. According to Detective Franke, the hard drive on the computer on which the e-mail messages were stored malfunctioned, and he threw it in the garbage. Because entrapment was part of his defense, Mr. Pearl claims that the e-mail messages "reveal the ongoing 'project' between Det. Franke and Call-Tarbet whereby they hook 'fish' on the Internet, and Call-Tarbet promotes Detective Franke as Jamasis in sex chat rooms." Aplt. Br. at 28. Upon Defendant's motion for a new trial, the district court denied the motion on the grounds that the Defendant was able to produce the e-mail messages from the sender's (Ms. Call-Tarbet's) computer and cross examine Detective Franke about the deleted e-mail messages. VI Rec. Doc. 409 at 4-6.

We review the district court's factual finding concluding that the government did not destroy potentially exculpatory evidence for clear error, see

United States v. Parker, 72 F.3d 1444, 1451 (10th Cir. 1995), though where "a new trial motion is based on an alleged Brady violation," we "review the district court's ruling de novo." United States v. Quintanilla, 193 F.3d 1139, 1146 (10th Cir. 1999). The same de novo standard is applied to the district court's determination whether the undisclosed evidence was material. United States v. Hughes, 33 F.3d 1248, 1251 (10th Cir.1994). Brady v. Maryland, 373 U.S. 83 (1963) governs exculpatory material that is still in the government's possession, and California v. Trombetta, 467 U.S. 479 (1984), and Arizona v. Youngblood, 488 U.S. 51 (1988), govern exculpatory evidence no longer in the government's possession. See United States v. Gomez, 191 F.3d 1214, 1218 (10th Cir.1999).

To establish a Brady violation, a defendant must show "1) that the prosecution suppressed evidence; 2) that the evidence was favorable to the accused; and 3) that the evidence was material." Smith v. Sec'y of N.M. Dep't of Corr., 50 F.3d 801, 824 (10th Cir. 1995) (internal quotation marks omitted). For police destruction of evidence to rise to the level of affecting a defendant's Due Process rights under California v. Trombetta, the evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." 467 U.S. 479, 489 (1984). In addition, unlike a Brady analysis, the defendant must show that the government acted in

bad faith. Youngblood, 488 U.S. at 58. Because this case presents an issue of the government's destruction of evidence, we analyze Mr. Pearl's claim under the Trombetta standard.

Mr. Pearl utterly failed in his motion for a new trial to demonstrate that the e-mail messages were exculpatory and that the government acted in bad faith. All or virtually all of the deleted e-mail messages contained on the damaged and discarded hard drive were contained on another drive (either Mr. Pearl's or Ms. Call-Tarbet's computer), thereby failing to satisfy the "unable to obtain comparable evidence by other reasonably available means" aspect of Trombetta analysis. Furthermore, there was no evidence that the detective acted in bad faith. The loss of the e-mail messages and hard drive was, at worst, the product of negligence. Parker, 72 F.3d at 1452 ("Mere negligence is not sufficient to establish . . . bad faith."). Furthermore, defense counsel had an adequate opportunity to cross examine Detective Franke concerning the deleted e-mail messages and to raise the entrapment defense before the jury.

Mr. Pearl also argues that the district court should have held an evidentiary hearing to determine whether loss of the e-mail messages constituted a due process violation. We review the decision of the district court on the propriety of an evidentiary hearing for an abuse of discretion. United States v. Nichols, 169 F.3d 1255, 1263 (10th Cir. 1999). The district court was under no obligation to

hold an evidentiary hearing, see United States v. Sutton, 767 F.2d 726, 729 (10th Cir. 1985), and we find that the district court acted well within its discretion when it decided not to hold an evidentiary hearing and instead resolved Defendant's Brady claim on the record. See Lawrence v. Lensing, 42 F.3d 255, 259 (5th Cir. 1994).

C.      Sentencing Issues

Mr. Pearl was given a five-level increase to the guideline calculation pursuant to U.S.S.G. § 2G2.2(b)(2). Under that section of the Guidelines, a defendant's sentence can be increased "[i]f the offense involved distribution." Distribution, in turn, is defined as "includ[ing] any act related to distribution for pecuniary gain . . . . ," Application Note 1. Application Note 2 to § 1B1.1 provides that "[t]he term 'includes' is not exhaustive."

Because we are remanding counts 2 through 5 for retrial, we need not address the apparent circuit split over whether an increase may be imposed absent a pecuniary gain. Compare United States v. Laney, 189 F.3d 954, 959 (9th Cir. 1999) and United States v. Black, 116 F.3d 198, 202-03 (7th Cir. 1997) (pecuniary gain required) with United States v. Probel, 214 F.3d 1285, 1289 (11th Cir. 2000); United States v. Lorge, 166 F.3d 516, 518 (2d Cir. 1999); United States v. Hibbler, 159 F.3d 233, 238 (6th Cir. 1998) and United States v. Canada, 110 F.3d 260, 263 (5th Cir. 1997) (pecuniary gain not required in order to impose

5-level increase).

Mr. Pearl initially contested the district court's sentencing decision not to group counts 4 and 5 (relating to possession and transportation of child pornography) with counts 6 and 7 (relating to enticement and traveling to engage in sexual activity with a minor). Aplt. Br. at 43-45. He then filed a motion to withdraw this argument, confirming this at oral argument. Because the convictions on counts 4 and 5 will now be vacated and remanded for retrial, it would be premature to address this issue at this time. We thus deny the motion as moot.

In a pro se filing to this court, Mr. Pearl seeks leave to raise a claim that the district court erred in responding to a question from the jury about the application of the entrapment instruction, and reasserts the argument made by his counsel regarding the alleged Brady violation. As Mr. Pearl is represented by counsel, we deny his motion to file an additional pro se supplemental brief which the court received but did not file. To the extent he seeks to raise claims of ineffective assistance of counsel, we note that "[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995).

## Conclusion

For the foregoing reasons, we VACATE the convictions on counts 2 through 5 and REMAND the case to the district court for retrial of those counts. The convictions on counts 6 and 7 are AFFIRMED. The motion to supplement the record with trial counsel's letter requesting the government take into custody various computers of law enforcement personnel is granted.

**00-4170, <u>United States v. Pearl</u>**

**BRISCOE, Circuit Judge, concurring and dissenting:**

I concur in the majority's resolution of the <u>Brady/Trombetta</u> issue and its affirmance of defendant Thomas Pearl's convictions on Counts 6 and 7. I respectfully dissent, however, from the majority's decision to vacate Pearl's convictions on Counts 2 through 5 for transporting and possessing child pornography.

Prior to 1996, "Congress defined child pornography as . . . images made using actual minors." <u>Ashcroft v. Free Speech Coalition</u>, 122 S. Ct. 1389, 1397 (2002). In 1996, Congress enacted the Child Pornography Prevention Act (CPPA), 18 U.S.C. § 2251 et seq., and "extend[ed] the federal prohibition against child pornography to [include] sexually explicit images that appear[ed] to depict minors but were produced without using any real children." <u>Id.</u> at 1396. More specifically, the CPPA added two prohibited categories of speech: (1) 18 U.S.C. § 2256(8)(B), which prohibited "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture" that "[wa]s, or appear[ed] to be, of a minor engaging in sexually explicit conduct"; and (2) 18 U.S.C. § 2256(8)(D), which defined child pornography to include any sexually explicit image that was "advertised, promoted, presented, described, or distributed in such a manner that convey[ed] the impression" it depicted "a minor

engaging in sexually explicit conduct."

These additional categories of prohibited speech were in place at the time Pearl committed the acts in question and was charged in this case. Thus, Counts 2 through 5 of the indictment, which charged Pearl with transporting and possessing "child pornography" in violation of 18 U.S.C. §§ 2252A(a)(1) and (a)(5)(B),[1] implicitly incorporated these additional categories of prohibited speech. After he was indicted, Pearl moved to dismiss Counts 2 through 5 of the indictment on the grounds that the two categories of prohibited speech added by the CPPA, 18 U.S.C. §§ 2256(8)(B) and (D), were overbroad, vague, and unconstitutional. In support of his motion, Pearl asserted that "[n]o evidence ha[d] yet been adduced on the record as to whether the alleged images [we]re images of actual minors or whether the alleged images [we]re computer 'morphed' images, i.e., computer composite images that may contain body parts from various individuals which are combined or 'morphed' into an image that is not real." ROA, Vol. I, Doc. 134 at 1-2. The district court denied Pearl's motion.

At no time thereafter did Pearl question whether the images at issue showed

---

[1] Section (a)(1) makes it a felony for any person knowingly to transport in interstate commerce "by any means, including by computer, any child pornography." Section (a)(5)(B) makes it a felony for any person knowingly to possess any "computer disk . . . that contains an image of child pornography that has been . . . transported in interstate . . . commerce by any means, including by computer."

actual children engaged in explicit sexual activity. Indeed, prior to trial, Pearl

stipulated that "he knew the[] images [at issue] were child pornography and that

minors appear[ed] in the images." ROA, Vol. IV, Doc. 351 at 2; see also id.,

Doc. 350 (minute order noting that "the dft stipulated to the fact that the images

contained child pornography and that there [we]re minors in the pictures").

Consistent with this stipulation, at trial Pearl admitted all of the essential

elements of the child pornography-related counts and argued only that he had

been entrapped by law enforcement officers and their agents. Pearl admitted

under cross-examination that the computer diskettes seized from him at the Salt

Lake Airport contained images of child pornography and that the images depicted

minors engaged in sexually explicit conduct.[2] Likewise, Pearl admitted under

---

[2] The following colloquy took place between the prosecutor and Pearl concerning images contained on Pearl's laptop computer:

Q. Mr. Pearl, when you came to Salt Lake City on May 21st, 1999, you brought your laptop computer with you, didn't you?
A. Yes, I did.
Q. And you also brought some computer diskettes; isn't that right?
A. Yes, it is.
Q. Mr. Pearl, I'm handing you what have been marked Plaintiff's Exhibits 44-A through 44-H, 45-A through 45-K, 46-A through 46-R, 47-A through 47-F, and 48-A through 48-L. If you'll please take a look at these and tell the jury if these are the images that you brought to Salt Lake City on May 21st, 1999 on those computer diskettes?
A. I would imagine, if these are the ones that were found on the diskettes.
Q. You're not denying those are the images, are you?
A. No, not at all.

(continued...)

cross-examination that he sent images of child pornography over the internet and that those images showed minors engaged in sexually explicit conduct.[3] Finally, Pearl did not move for judgment of acquittal on the grounds that the images at issue were "virtual" rather than actual minors.

Pearl now asserts, however, that in light of the Supreme Court's decision in Free Speech Coalition, his child pornography-related convictions must be reversed and the case remanded to the district court with instructions that a judgment of acquittal be entered with respect to those counts. In support of his assertion, Pearl notes that the district court's instructions to the jury defined the phrase "child pornography" to include not only visual depictions involving the use

---

[2](...continued)
Q. Do you agree those images depict minors engaged in sexually explicit conduct?
A. Yes.
ROA, Vol. XV at 38.

[3] The following colloquy took place between the prosecutor and Pearl concerning images sent by Pearl over the Internet:
Q. Mr. Pearl, do you agree that you sent child pornography to Mrs. Camielle Call-Tarbet over the Internet on May 4th, 1999?
A. Yes.
Q. Mr. Pearl, I'm handing you what have been marked as Plaintiff's Exhibits 8-A through 8-P. Could you please take a look at those and tell me if those are the images that you transmitted to her that day?
A. Yeah.
Q. And you agree, do you not, that those pictures are minors engaged in sexually explicit conduct?
A. Yes.
ROA, Vol. XV at 40.

of "a minor engaging in sexually explicit conduct," but also the unconstitutional language from § 2256(8)(B) encompassing visual depictions that "appear[ed] to be . . . of a minor engaging in sexually explicit conduct." ROA, Supp. Vol. I, Jury Inst. No. 21. Although Pearl admits that the Double Jeopardy Clause does not necessarily prohibit a retrial of the child pornography-related counts, he asserts that the evidence presented at trial was insufficient to support his convictions under the "actual minor" definition of "child pornography."

The threshold question is what standard of review to apply to Pearl's arguments. Although Pearl initially objected to the constitutionality of the "virtual" minor definition in his pretrial motion to dismiss the child pornography-related counts of the indictment, he made no further mention of the issue after the district court denied his motion. In particular, he failed to object, as required by Federal Rule of Criminal Procedure 30, to the district court's jury instruction defining child pornography. Likewise, he failed to move for judgment of acquittal on the grounds that the images at issue were "virtual" rather than actual minors. I therefore conclude that the issues he now asserts are subject to review only for plain error. E.g., United States v. Lee, 54 F.3d 1534, 1540 (10th Cir. 1995). Plain error exists when a clear or obvious error affecting substantial rights has seriously affected the fairness, integrity, or public reputation of the judicial proceeding. Johnson v. United States, 520 U.S. 461, 466-67 (1997).

The majority concludes, mistakenly in my view, that Pearl's motion to dismiss the indictment was sufficient to preserve his current objections to the district court's jury instruction. In reaching this conclusion, the majority first suggests, citing United States v. Gama-Bastidas, 222 F.3d 779, 785 n.4 (10th Cir. 2000), that application of the plain error standard is inappropriate "when the aggrieved party may object to the error at any time." Gama-Bastidas, however, rests on the principle stated in Federal Rule of Criminal Procedure 12(b)(2) that the failure of an indictment to state an offense may be raised at any time by the defendant or the court itself. No such principle applies to objections to jury instructions. Rather, as outlined in Federal Rule of Criminal Procedure 30 (2002), "[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." That leads to the majority's second rationale, i.e., that Pearl's motion to dismiss the indictment "plainly" preserved the issue. Maj. Op. at 6. The only authority cited by the majority for this proposition, United States v. Hathaway, 318 F.3d 1001, 1010 (10th Cir. 2003), is inapposite. Hathaway rests on the same principle as Gama-Bastidas – that a defendant may raise at any time the failure of an indictment to state an offense. It does not hold that a defendant's challenge to an indictment relieves him of his obligation to comply

- 6 -

with Rule 30.

After reviewing the record on appeal, I am convinced that the district court's definitional instruction, though clearly erroneous, did not affect Pearl's substantial rights or seriously affect the fairness, integrity, or public reputation of the judicial proceeding. As noted, Pearl stipulated prior to trial that minors appeared in the images at issue, and admitted this fact at trial under cross-examination. A review of the images at issue verifies this fact – there is no doubt that each image contains one or more minors, most of whom appear to be prepubescent. Thus, there was no basis in the record for a reasonable jury to conclude that the images were produced using adults who appeared to be minors. Finally, a review of the images at issue clearly "show[s] that the children depicted in those images were real." United States v. Hall, 312 F.3d 1250, 1260 (11th Cir. 2002) (concluding similar instruction regarding definition of "child pornography" was plain error but did not require reversal in light of the nature of the images that defendant was charged with distributing). In other words, "no reasonable jury could," after examining the images, "have found that the images were virtual children created by computer technology as opposed to actual children." Id.; see also United States v. Richardson, 304 F.3d 1061, 1064 and n.2 (11th Cir. 2002) (concluding under similar circumstances that, because "[t]he children depicted in th[e] images were real," the "jury could not reasonably have found that the

children were virtual children, as if created by computer imaging technology").[4]

Thus, I conclude there was no risk that the jury convicted Pearl under the constitutionally erroneous portion of the district court's definitional instruction (i.e., the "appears to be" portion of the instruction).

For these reasons, I would affirm all of Pearl's convictions, including those for transmitting and possessing child pornography as charged in Counts 2 through 5.

---

[4] The majority states that in <u>Hall</u> and <u>Richardson</u>, "the government offered expert testimony at trial to prove that the images depicted actual minors." Maj. Op. at 6. What the majority overlooks, however, is that in both <u>Hall</u> and <u>Richardson</u>, the court conducted its own independent review of the images at issue and, in each case, concluded they were of actual children. <u>See</u> <u>Hall</u>, 312 F.3d at 1260 ("the pictures sent out to the jury are in the record before this court and they show actual children"); <u>Richardson</u>, 304 F.3d at 1064 ("We have examined the images shown to the jury. The children depicted in those images were real.").